UNITED STATES *v.* FRAGELE BROS. (No. 2396).[1]

REMAND FOR FINDINGS.

Where it regards the findings of facts and conclusions of law required by section 501, tariff act of 1922, to be made in writing by the Board of United States General Appraisers in appraisement appeals as helpful to it in its decision of issues involved in the case, this court has the authority to direct of its own volition, without assignment of error, that the mandate of the law be complied with; and the cause is remanded for such written finding to be made.

United States Court of Customs Appeals, November 28, 1924

APPEAL from Board of United States General Appraisers, Reappraisement Circular 34730

[Reversed and remanded.]

*William W. Hoppin,* Assistant Attorney General (*John G. Lerch* and *John A. Kemp,* special attorneys, of counsel), for the United States.
*Comstock & Washburn* (*George J. Puckhafer* of counsel) for appellees.

[Oral argument Oct. 21, 1924, by Mr. Lerch and Mr. Puckhafer]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Appellant appeals from the judgment of the Board of United States General Appraisers which affirmed the decision of the single general appraiser, which decision of the single general appraiser sustained the invoice value of certain goods imported from Czechoslovakia.

The goods were invoiced and entered with the addition of one-half of 1 per cent for turnover tax levied by the Czechoslovakian Government, and the goods were appraised by the local appraiser by adding a 2 per cent turnover tax instead of one-half of 1 per cent as invoiced. Upon reappraisement the invoice value was sustained. The Board of General Appraisers affirmed the decision of the general appraiser, and the Government appeals to this court.

The chief difficulties in this case arise from the meagerness of facts and the contradictory character of same rather than from any complexity of legal problem. The evidence in the case consisted of a report of a confidential agent named Neustadt and certain testimony given by him before the single general appraiser. The evidence is so unsatisfactory that it would be difficult to state just what it shows, but we think the following sets out the pertinent parts of the report and testimony:

That Gablonz ware consisting of manufactures of glass such as beads, crystals, etc., is manufactured in the Gablonz District in the neighborhood of the city of Gablonz, Czechoslovakia; that there are about 1,400 producers of same and that there are both large and small producers; that the industry is known as a so-called home industry; that the workers are scattered around among the

[1] T. D. 40543.

mountains, and that agents or commissionnaires travel around from place to place and place orders for goods; that if the goods are sold by the agents they are sold on a commission range from 2 to 10 per cent paid by the producer; that there is practically no demand for Gablonz ware in Czechoslovakia.  The special agent states that he was advised that only about one-thousandth per cent of the production of Gablonz ware was sold for home consumption.  Ninety per cent is exported to the United States and the balance to other countries; that the parties interviewed stated that there is no fixed market value on Gablonz ware, but that it fluctuates very much, depending on demand.  The exporter's purchase price is the same, whether the goods are destined for home consumption or exportation.  Some of the largest producers sell for home consumption and also for export.  The marketing of Gablonz ware as a rule is done through exporters located in the city of Gablonz, who are members either of the German organization, known as the "Gremium of Exporters," or the Czecho Association, known as the "Swaz."  The members of these organizations enjoy the grant of special concessions from the Czechoslovakian Government.  There is a general turnover tax of 2 per cent on all merchandise sold for home consumption.  Under a special agreement between the Government and the societies 'the turnover tax on Gablonz ware when exported by anyone is one-half of 1 per cent instead of 2 per cent, and if Gablonz ware is sold by a member of the society for home consumption a tax of only one-half of 1 per cent is charged.  If the producers, or one not a member of the society, sells for home consumption he is required to pay the 2 per cent turnover tax.

The special agent also stated that he was unable to discover any sales for home consumption.  (Note conflicting character of last three sentences.)

The report further states that an "insignificant amount," less than 1 per cent of the merchandise, is purchased from producers.

In accordance with the provisions of the tariff act of September 21, 1922, the single general appraiser, upon appeal to reappraisement, proceeded to ascertain and return the value of the merchandise. After hearing the witness and having before him the report of the special investigator, and the records of the two other cases submitted, he affirmed the invoice value.  The invoice value contained the item of one-half of 1 per cent tax.  In the reappraisement decision, 21222A, by General Appraiser Sullivan, involved in this case, the following is found:

I find, after having proceeded according to the law governing such appeals, upon the evidence and the facts disclosed by the record made before me, that the actual dutiable value or wholesale price of the merchandise at the time of exportation in the principal markets of the country from whence exported, was as follows: In each of the cases specified in the annexed schedule, which is made part of this order, the reappraised value is as follows:

Invoice value sustained.

And I do hereby find the dutiable value of such merchandise accordingly.

The main and controlling part of the board's decision in reviewing the general appraiser's decision is as follows:

In the case at bar we are of the opinion that the Government has failed to overcome the presumption of correctness attaching to the finding of the single general appraiser.

The decision of the single general appraiser is therefore affirmed.

That Board of General Appraisers, under section 501 of the tariff act of 1922, is required to "state its action in a written decision, to be forwarded to the collector, setting forth the facts upon which the finding is based and the reasons therefor." In Kuttroff, Pickhardt & Co. *v.* United States (12 Ct. Cust. Appls. 261; T. D. 40269) the importers, appellants, assigned as error of the board of three general appraisers that they had not complied with the provisions in the above section. This court decided that the objection was well taken and the case was remanded to the board to enable it to make its findings of facts and conclusions of law. Subsequently under the authority of the Kuttroff case, supra, this court took similar action in other cases. In this case the failure of the Board of General Appraisers to make such findings of facts and conclusions of law was not by the appellant assigned as error. In the Kuttroff, Pickhardt & Co. case, supra, we held that the statute mandatorily imposed upon the board the duty of making such findings.

Where it regards the findings of facts and conclusions of law as helpful to it in its decision of issues involved in the case this court has the authority to direct of its own volition, without assignment of error, that the mandate of the law be complied with by the board.— 38 Cyc. (p. 1953); Hubble *v.* Renick (1 Ohio St. 171); Osborne *v.* Heyward (40 N. Y. App. Div. 78); Estho et al. *v.* Lear, adm'r (7 Pet. 129); Barber *v.* Coit (118 Fed. 272); Standard Computing Scale Co. *v.* Computing Scale Co. (145 Fed. 627); United States *v.* Adams (73 U. S. 101).

In this case the decision of the Board of General Appraisers does not disclose how it arrived at the conclusion that the invoice value should be sustained nor does it indicate whether it found the invoice to be the export value with the one-half of 1 per cent added, or whether it found that the export value included the one-half of 1 per cent, or whether it found the foreign value based upon sales made by the selling agencies in the home market of Czechoslovakia for home consumption, or whether it found the foreign value based upon sales made by the selling agencies or producers for export.

Adopting the language in some of the decisions above cited we do not think the case as it stands before us is prepared for review, since without the findings of facts and conclusions of law required by the statute we are unable to determine whether the board has proceeded in accordance with the law or otherwise.

The case is therefore reversed and remanded to the Board of General Appraisers to enable it to make its findings of facts and conclusions of law as in the statute provided. *Reversed and remanded.*