## UNITED STATES *v.* RICHARD & Co. (No. 2916)[1]

United States Court of Customs Appeals, May 19, 1927

*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter* and *James R. Ryan*, special attorneys, of counsel), for the United States.
*Curie, Lane & Wallace* (*William Young* of counsel) for appellee.

[Oral argument May 10, 1927, by Mr. Carter and Mr. Young]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The present appeal involves the reappraisement of 40 entries of heavy brass ware, exported by Pearson-Page Co. (Ltd.), of Birmingham, England, to Skinner-Hill Co. (Inc.), at New York, N. Y. The importer claimed allowances for discounts of 10 per centum and 2½ per centum from its invoice prices and added costs of packing and cases to make dutiable value. The local appraiser disallowed the 10 per centum allowance claimed. On appeal to reappraisement, one entry, No. 46232–A, was taken as representative of all entries involved and Associate Justice Fischer allowed the 10 per centum discount. On application for review, the Customs Court affirmed this judgment. From the last judgment the Government has appealed to this court.

We have but one question for consideration, namely, should the discount of 10 per centum from cost price have been allowed as a deduction from dutiable value?

The record before us shows the following facts: The goods involved are brass jardinières and electric brackets and were imported May 19, 1925. S. P. Skinner started to import goods similar to those in question from Pearson & Page Co. in 1922. Having become incorporated as Skinner-Hill Co. in 1923, the importations were continued. The arrangement between the importer and exporter was that the importer settle for his goods once a month and have discounts of 12½ and 2½ per centum for goods purchased after June 1, 1925. The importer, although receiving discounts of 12½ and 2½ per centum, has always entered its goods with claimed discounts of 10 per centum and 2½ per centum. The importer is a wholesaler only, and during the year 1925 imported approximately $175,000 worth of said products; it is also the exclusive representative of the exporter in New York and receives a commission on all goods sold in New York direct to other customers. The Pearson-Page Co. (Ltd.) sells to only three customers in the United States upon a so-called wholesale basis; that is, list price less discounts of 10 and 2½ per centum. To all other customers, whether wholesale or retail, in the United States, sales are made at list price less 2½ per centum. These three favored im-

porters are the appellee, Lewis & Conger, and Marshall Field & Co. In home sales in the markets of Great Britain and Ireland, any person may buy with discounts of 10 per centum and $2\frac{1}{2}$ per centum who has satisfied Pearson-Page Co. (Ltd.) that he is selling only at wholesale. All other foreign buyers, however, pay list prices, less $2\frac{1}{2}$ per centum. The quantity purchased has no effect upon the unit price. Buyers who sell at wholesale only receive the full discount, even though the amount purchased be small, while other buyers do not receive the 10 per centum discount, even though they buy large quantities. The greater number of customers do not receive the 10 per centum discount. An analysis of the total sales of the Pearson-Page Co. in all countries for the first six months in 1924, as given by the report of C. B. Wait, a customs representative, shows a total sale of £40,000, £11,000 thereof being subject to discounts of 10 per centum and $2\frac{1}{2}$ per centum, approximately £4,000 at discounts less than 10 per centum and $2\frac{1}{2}$ per centum, but greater than $2\frac{1}{2}$ per centum and mostly less than 10 per centum, and the balance of sales, £25,000, at the single discount of $2\frac{1}{2}$ per centum.

It was the duty of the local appraiser and the associate justice, on appeal, to ascertain the dutiable value of the imported goods under section 402 (b) of the Tariff Act of 1922, which is as follows:

The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The judgment of the Customs Court is, in effect, that, on the record before it, the imported merchandise, at the time of exportation, was freely offered for sale in the principal markets of England, in the usual wholesale quantities and in the ordinary course of trade, at the invoice price, less 10 per centum and $2\frac{1}{2}$ per centum. The case thus resolves itself into a disposition of the question whether there is any substantial evidence in the record to sustain such a finding. *Metz & Co.* v. *United States*, 13 Ct. Cust. Appls. 412; *United States* v. *Davies, Turner & Co.*, 13 Ct. Cust. Appls. 547; *United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls. 579.

We are unable to see, under the facts hereinbefore stated, where any such evidence appears in the record. The exporters are selling a minor portion of their product at the price claimed by the importer here, namely, list price less 10 per centum and $2\frac{1}{2}$ per centum. How may this properly be claimed to be the *ordinary* course of trade? Even if it be conceded that the *ordinary course of trade* may

be determined by the usage in a minor fraction thereof, it certainly can not be said that merchandise is being *freely offered for sale* when it is offered to certain purchasers only, and these purchasers, ones who have *"satisfied"* the seller that they are wholesalers only. There might be more reason for the contention that a larger discount uniformly offered to purchasers of larger quantities might be considered *"freely offered for sale,"* under this statute, but such a method of procedure differs vastly from the one here disclosed, a method which gives a discount of 10 per centum to a purchaser of one jardinière and no such discount to the purchaser of one thousand.

A somewhat similar question was before the court in *Goodyear Tire & Rubber Co.* v. *United States* 11 Ct. Cust. Appls. 351. The Goodyear company, a corporation, was a manufacturer of rubber tires. The distribution and sale of these tires were controlled by the manufacturer until the time when they reached the hands of their ultimate consumers. Graduated prices were fixed for exporters, manufacturers of automobiles, jobbers, and dealers. Manufacturers of automobiles were favored with a lower price, but were compelled to agree that the tires purchased by them must be used on cars sold by them. The merchandise was held by the court to not be "freely offered for sale" under paragraph L of Section III of the tariff act of October 3, 1913. The court said:

> More than that, if fixed prices in such a restricted market be actual market value, then the manufacturer who fixes prices and controls the market has the power to make a market value to his liking and thereby determine in some measure the duties to be paid on his product—a power which might well be exercised not to protect jobbers, dealers, and consumers, as in this case, but to reduce duties on goods manufactured largely or wholly for foreign consumption.

Again, we said in *Kuttroff, Pickhardt & Co.* v. *United States*, 12 Ct. Cust. Appls. 299, speaking of the "freely offered for sale" provision contained in subdivision (f) of section 402 of the Tariff Act of 1922:

> Individuals, firms, or corporations having a monopoly of some particular commodity can not establish the statutory American selling price by special factitious offerings or by sales to controlled or favored purchasers or by transfers of less than the usual wholesale quantities or by transactions in a market not recognized by the trade and not developed in the ordinary course of business.

We quoted this language with approval in *Sandoz Chemical Works* v. *United States*, 13 Ct. Cust. Appls. 466, when a somewhat similar question was involved.

In *United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls. 579, the dutiable value of certain earthenware products of Canadian Products (Ltd.) was involved. This court, speaking of values fixed under sections 402 (b) and (c) of the Tariff Act of 1922, said:

> Those subsections provide that the foreign or export value of imported merchandise "shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely

offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade," including the cost of containers and other costs.

It will be observed that the statute provides that the merchandise must be freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade. Accordingly, the prices at which merchandise is sold to a limited number of favored purchasers, or to the retail trade only, in quantities greater or less than the usual wholesale quantities, would not be proper evidence of the market value of such merchandise. Such prices are not those at which such merchandise is *freely* offered for sale to *all purchasers* in the *usual wholesale* quantities and in the *ordinary course of trade*.

In this connection, see also *United States* v. *Davies, Turner & Co., supra*.

It is argued because sales to wholesalers are all made at the same price that therefore this price thus becomes the wholesale price. But it will be observed that the statute does not thus establish the wholesale price. Section 402 (b) does not provide that the wholesale price shall be the price *to wholesalers*, but the price in the usual *wholesale quantities*. The law is not concerned with the persons who buy, but the manner in which they buy.

In our opinion there is no substantial evidence in the record sustaining the judgment below and said judgment is therefore hereby reversed and the cause remanded for further proceedings in conformity with this opinion.

*Reversed* and *remanded*.