G. GENNERT (INC.) *v.* UNITED STATES (No. 3261)[1]

United States Court of Customs and Patent Appeals, April 10, 1930

John R. Rafter (*Harry M. Farrell* of counsel) for appellant.

*Charles D. Lawrence*, Assistant Attorney General (*Oscar Igstaedter*, special attorney, of counsel), for the United States.

*Lamb & Lerch* (*John G. Lerch* of counsel) *amici curiæ*.

[Oral argument February 14, 1930, by Mr. Rafter, Mr. Igstaedter, and Mr. Lerch]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court in Reappraisements 14337–A, etc.

The imported merchandise is a coal-tar product, known as "methylparamidophenol and monomethylparamidophenolsulfat, metol." It

---

[1] T. D. 43073.

is admitted by counsel for the parties that the merchandise is dutiable under paragraph 28 of the Tariff Act of 1922, and subject to the provisions thereof; that it is competitive with a coal-tar product produced in the United States, "rhodol," and is dutiable at a value based upon the American selling price of that article as defined in section 402 (f).

The pertinent part of paragraph 28 of the Tariff Act of 1922 reads as follows:

PAR. 28. * * * 45 per centum ad valorem based upon the American selling price (as defined in subdivision (f) of section 402, Title IV) of any similar competitive article manufactured or produced in the United States, and 7 cents per pound: * * *.

Section 402 (f) reads:

SEC. 402. (f). The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

It appears from the record that some of the merchandise was exported from Germany in 1923, some in 1924, some in 1925, some in 1926, and one importation in January, 1927.

The appraiser found that the American selling price of rhodol was as follows: 1923, $3.50 to $3.65 per pound; 1924, $3.75 to $3.85 per pound; 1925, $3.75 to $3.85 per pound; 1926, $3.50 to $3.85 per pound; 1927, $3.50 per pound. The imported merchandise was appraised accordingly.

On appeal, the associate justice, sitting in reappraisement, found that the American selling price of rhodol was as follows: 1923, $3.25 per pound; 1924, $3.25 per pound; 1925, $3.25 per pound; 1926, $3.25 per pound; 1927, $3.25 per pound; and accordingly held that the dutiable value of the merchandise was $3.25 per pound.

On January 17, 1929, the appellate division of the United States Customs Court affirmed the judgment of the trial court. Thereupon, counsel for the Government filed an application for a rehearing. The application was granted, and, on July 5, 1929, the court modified the judgment of the trial court, holding that the American selling price of rhodol was as follows: 1923, $3.50 per pound; 1924, $3.25 per pound; 1925, $3.75 per pound; 1926, $3.75 per pound; 1927, $3.75 per pound.

It is here contended by counsel for appellant that the appellate division of the Customs Court erred in holding that the merchandise exported from Germany in the years 1925, 1926, and 1927 was duti-

able at $3.75 per pound, because, in so holding, the court "exceeded the limits of the issue in those cases, as defined by the assignment of errors on the application for review of the reappraisement decision, and also gave the Government, as appellant, a more favorable judgment than was prayed for in such cases"; that the court "misinterpreted" the decision of this court in the case of *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, T. D. 42216; and that there is no substantial evidence in the record to support the judgment of the appellate division in so far as it modified the judgment of the trial justice.

In explanation of the first contention, namely, that the court erred in giving a more favorable judgment than was prayed for, counsel for appellant has pointed out in his brief that it was claimed by the Government in its specification of errors on the trial below, that the American selling price of the competitive article—rhodol—produced in the United States was $3.50 per pound, instead of $3.25 per pound as held by the trial justice; and that no claim was made in the Government's specification of errors that the American selling price of rhodol was at any time greater than $3.50 per pound. Counsel has presented able arguments and has cited many authorities in support of his contention.

It may be that the court below erred in this respect. However, it is obvious from an examination of the record that appellant did not raise this issue in its assignment of errors. Therefore, this court is not called upon to consider the matter, and does not do so.

Section 198 of the Judicial Code provides that applications for review by this court of judgments of the United States Customs Court shall be made by filing a "concise statement of errors of law and fact complained of." Generally, this court will not consider any errors or grounds of appeal except those presented in the assignment of errors. *Gallagher & Ascher et al.* v. *United States*, 4 Ct. Cust. Appls. 291, T. D. 33512; *United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls. 579, T. D. 41436; *United States* v. *Wakem & Mc-Laughlin*, 14 Ct. Cust. Appls. 161, T. D. 41692. An exception has been made in appeals in appraisement proceedings where the appellate division of the Customs Court has failed to state its findings of fact and conclusions of law. *United States* v. *Fragele Bros.*, 12 Ct. Cust. Appls. 381, T. D. 40543.

It is argued that the court below has misconstrued and wrongly applied the decision in the case of *United States* v. *Richard & Co.*, *supra*, and, in so doing, has departed from long-continued practice of "giving preference to sales to dealers, rather than to *consumers* in finding dutiable value under present and previous tariff acts."

In the *Richard & Co.* case this court held that section 402 (b) of the Tariff Act of 1922 did not provide that foreign value should be

the "price made to *wholesalers*, but the price in the usual *wholesale quantities.*"

Under section 402 (f), *supra*, the American selling price of an article produced in the United States is the price "at which such article is freely offered for sale to *all purchasers in* the principal market of the United States, in the ordinary course of trade and in the *usual wholesale quantities* in such market." (Italics ours.)

It appears from the record that rhodol was sold both to dealers and to manufacturers, and that the latter are consumers of the product.

It is conceded that the usual wholesale quantity is 100 pounds.

The witness, Charles F. Kelly, testified that the Rhodia Chemical Co. freely offered and sold rhodol to all purchasers in the ordinary course of trade and in the usual wholesale quantities during the years 1923, 1924, 1925, 1926, and 1927, at the values found by the court below; that, in the event that a dealer agreed to purchase rhodol in large quantities, the Rhodia Chemical Co. gave such dealer a special price of 25 cents a pound less than the prevailing wholesale price. Although the evidence is somewhat conflicting, the following testimony of the witness, Kelly, is substantial and is in conformity with other testimony given by the witness on the trial:

Q. Now, to sum up, you sell to both dealers and manufacturers?—A. We do.

Q. And you sell to dealers at about 25 cents a pound cheaper than you do to manufacturers; is that right?—A. At that time we did.

Q. To protect the dealer?—A. Yes, sir.

Q. And you sell to everybody who would offer you your price, dealer or manufacturer?—A. Yes, sir.

Q. And you do not confine yourself to dealers?—A. No, sir.

Q. You sell to anybody at all at your price?—A. Yes, sir.

Q. And you sell to dealers in larger quantities at 25 cents less than the price you sell to everybody?—A. If they are going to use our material in large quantities.

Q. You do not give that price unless they agree to buy in large quantities?—A. No, sir.

Based upon this and other evidence, the court below made its findings of fact.

There is substantial evidence in the record tending to establish that rhodol was freely offered for sale in the ordinary course of trade and in the usual wholesale quantities to all purchasers in the principal market of the United States, at the prices found by the court below; and that the prices paid by certain dealers were special and contingent upon the purchase of rhodol in large quantities. Obviously, a special price to some dealers does not constitute the American selling price of rhodol.

The evidence in this, as in most cases, is conflicting. It was the duty of the court below to weigh the evidence. It has done so. We have no authority in cases of this character to pass on the weight of the evidence, but are limited to the consideration of questions of law only.

It is evident from the testimony hereinbefore quoted that there is some substantial evidence to support the judgment below, and it is, therefore, *affirmed.*