The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v*. A. S. NEUBERGER AND AMERICAN GLANZSTOFF CORP. (No. 3410)[1]

---

[1] T. D. 45241.

United States Court of Customs and Patent Appeals, October 26, 1931

*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein* and *Ralph Folks*, special attorneys, of counsel), for the United States.

*John R. Rafter* for appellees.

[Oral argument October 5, 1931, by Mr. Folks and Mr. Rafter]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court in a reappraisement proceeding, holding an importation of artificial-silk yarn dutiable at the value claimed by the importers, appellees herein.

Since the filing of this appeal the parties hereto have entered into the following stipulations:

It is hereby stipulated and agreed by the attorneys for the parties hereto that the entries mentioned below may be returned to the collector of customs at New York, and the appellees (importers) agree to waive any right, title, or interest in the decision rendered in their favor by the United States Customs Court under date of December 5, 1930 (Reap. Circ. 1883), in so far as the same covers these entries, and the appellees further agree to abandon any claim for refund that might accrue to them by reason of any decision in the above-entitled suit 3410.

The reason for this stipulation is that the entries mentioned below are urgently needed in the drawback division of the customhouse to complete certain drawback cases that the importers have pending therein, and this stipulation is without prejudice to the rights of the Government. The entries mentioned below are for the American Glanzstoff Corp.

| Entry No. | Vessel | Date of entry |
|---|---|---|
| 796624 | Muenchen | 11/5/28 |
| 754878 | Stuttgart | 9/17/28 |
| 753227 | York | 9/27/28 |

It is hereby stipulated and agreed that the entries mentioned below may be returned to the collector of customs at New York and that the appellees (importers) waive all right, title and interest in and to any refunds of duties on such entries which may accrue to them by reason of the decision rendered by the United States Customs Court under date of December 5, 1930 (Reap. Circ. 1883), or by reason of any decision in the above-entitled appeal which may be rendered in their favor by the United States Court of Customs and Patent Appeals, in so far as it relates to said entries.

The reason for this stipulation is that the entries mentioned below are urgently required in the drawback division of the customhouse at New York to complete certain drawback cases in which the appellees (importers) are interested.

This stipulation is made without prejudice to the rights of the Government. The entries referred to are—

| Entry No. | Vessel | Date of entry |
|---|---|---|
| 715778 | Yorck | 7/24/28 |
| 785572 | Dresden | 10/23/28 |

The record before us applies to seven entries which were the subject of the judgment below. By reason of said stipulations, the issue, so far as the entries covered thereby are concerned, becomes a moot question. There remain, however, two entries affected by the issue in this appeal.

The issue involved is whether the foreign value of the merchandise in question, as defined in section 402 (b) of the Tariff Act of 1922, is the appraised value, or that value less a 2 per centum discount allowed by the exporters to wholesalers in Germany purchasing the merchandise for resale.

The evidence in the record consists of the record of a previous case (reap. 80888–A), involving identical merchandise, and a customs agent's report offered by the appellant.

It appears from the record that in the latter part of the year 1928 the shipments of the merchandise were made from Germany, being consignments to appellees, who are the sole agents of the shipper in the United States.

The ground of appellees' appeal to reappraisement was that the appraiser had erroneously refused to allow a discount of 2 per centum granted to purchasers in Germany of like merchandise in wholesale quantities.

Upon the trial, the trial judge, sitting in reappraisement, sustained the contention of the importers, and upon appeal to the appellate division the contention of appellees was likewise sustained and judgment entered accordingly. From such judgment this appeal is taken.

This being a reappraisement proceeding, if there be any substantial evidence in the record to support the judgment below, it must be affirmed.

Section 402 (b) of said Tariff Act of 1922 reads as follows:

(b)  The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

With regard to sales of merchandise of the character here involved in Germany, the lower court, after quoting from the special agents' report made in 1930, said:

The facts satisfactorily establish that while certain wholesalers obtain the 2 per centum discount, notwithstanding they are fewer in number or purchase a less quantity than the factories, yet it is our judgment that the factories being more numerous, and purchasing larger quantities than the wholesalers, are entitled to the same discount,

\*          \*          \*          \*          \*          \*          \*

The evidence establishes that the factories purchase wholesale quantities; for, as shown by the special agent's report, they are more numerous and purchase larger quantities than those styling themselves wholesalers.

We think, however, in view of the fact that said special agent's report was made in April, 1930, and does not purport to cover any period of time prior to the year 1930, and that it appears therefrom that the market had been unstable for some time, that no weight should be given to said report for the reason that it constitutes no evidence whatever of market conditions in 1928, when the merchandise here in question was exported.

There are other reports of special agents found in the record offered by the Government.  None of them tends to sustain the contentions of the appellees, and, in view of the conclusion we have reached, it is unnecessary to determine whether they sustain the contentions of the Government.

Unless an affidavit of one Emil Mowes, director of sales of the exporter of the merchandise here involved, offered in evidence by the appellees, furnishes substantial evidence supporting the judgment below, there is no such evidence.  We therefore proceed to consider said affidavit, the material portions of which read as follows:

2.  For more than three years last past my company has confined its shipments of artificial-silk yarns for exportation to the United States of America to one selling agent in that country, formerly Wolf, Strauss & Co. (Inc.) of New York, and now the American Glanzstoff Corp. of New York.  All such shipments have been made on consignment.

3.  For more than three years last past my company has been engaged in selling and has sold at wholesale large quantities of artificial-silk yarns for inland trade in Germany, which were and are identical in quality, size, and in every other respect with those shipped by us to the United States and which were put up and packed in the same manner as those shipped by us to the United States.  My

company's sales of such yarns for inland [trade] in Germany have been made to two general classes of customers, viz, (1) wholesale dealers, that is, those who buy in wholesale quantities for resale, and (2) consumers (manufacturers and converters), that is, those who buy for their own use.

4. Such yarns have been sold for inland [trade] in Germany at the same unit prices per kilo to all customers, less the same cash discount of 5 per centum and subject to the same scale of turnover discounts, which are dependent on annual purchases and payable in the year after purchase. During the whole period referred to, however, our prices to German wholesale dealers have always been and still are subject to a trade discount of 2 per centum in addition to the cash discount and turnover discounts referred to. This trade discount is allowed to all German wholesale dealers and is invariably deducted by them on payment of each invoice.

5. The consular invoices covering my company's shipments of artificial silk yarns to the United States have always stated the correct unit price per kilo of the same yarns for inland trade in Germany and the correct cash discount for such trade at the dates of such invoices. They have not, however, disclosed the trade discount of 2 per centum which has always been and still is allowed by us to all German wholesale dealers.

If this affidavit could be construed to the effect that the merchandise referred to was sold in the ordinary course of trade in wholesale quantities in Germany to "wholesale dealers" only, then there is substantial evidence to support the judgment of the lower court. If, on the other hand, the affidavit should be construed to the effect that the merchandise was sold in wholesale quantities to manufacturers and converters as well as to wholesalers for resale, then the judgment below must be reversed, for there is no other evidence in the record to support the judgment.

We are constrained to hold from the affidavit that the exporter's merchandise was sold in wholesale quantities to manufacturers and converters as well as to wholesalers, but that wholesalers only received the 2 per centum discount. The affiant states that his company "has sold at wholesale large quantities of artificial-silk yarns for inland trade in Germany"; he further states that—

My company's sales of such yarns for inland in Germany have been made to two general classes of customers, viz, (1) wholesale dealers, that is, those who buy in wholesale quantities for resale, and (2) consumers (manufacturers and converters), that is, those who buy for their own use.

It is plain from the foregoing that the merchandise was sold in wholesale quantities to both classes of customers, and the affiant is very careful to state that *wholesale dealers*, defined by him as those who buy in wholesale quantities *for resale*, received the 2 per centum discount, and we are compelled to conclude that others purchasing the same wholesale quantities did not receive such discount.

This conclusion makes applicable the principle of law declared in the case of *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, T. D. 42216, where this court said:

It is argued because sales to wholesalers are all made at the same price that therefore this price thus becomes the wholesale price. But it will be observed

that the statute does not thus establish the wholesale price. Section 402 (b) does not provide that the wholesale price shall be the price *to wholesalers*, but the price in the usual *wholesale quantities*. The law is not concerned with the persons who buy, but the manner in which they buy. (Italics quoted.)

It is clear to us that the allowance of the 2 per centum discount was based upon the class of purchaser, rather than the amount purchased.

There is, therefore, an absence of evidence that all purchasers buying in the usual wholesale quantities in the ordinary course of trade received the said 2 per centum discount, but the proof affirmatively shows that only a part of such purchasers received this discount.

We can find no substantial evidence in the record supporting the judgment of the court below, and it is therefore *reversed,* and the cause is *remanded* for further proceedings consistent with the views herein expressed.