UNITED STATES *v.* COLLIN & GISSEL (LUDWIG BAER)

**No. 4723.**—Invoice dated Leipzig, Germany, July 6, 1934.
  Certified July 11, 1934.
  Entered at Houston, Tex., August 10, 1934.
  Entry No. 102–H.

## Third Division, Appellate Term

(Decided February 6, 1940)

*Webster J. Oliver*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the appellant.
*Eugene R. Pickrell* for the appellees.

Before CLINE, EVANS, and KEEFE, Judges

EVANS, Judge: This is an application by the Government for review of a decision and judgment of a single judge sitting in reappraisement involving the dutiable value of one beer-barrel cleaning or washing machine exported from Germany July 11, 1934. Entry was made at the port of Houston, Tex., at the invoice price of $3,300. The local appraiser appraised the machine at 12,511.30 reichsmarks net, packed, on the basis of the cost of production as defined in section 402 (f) of the Tariff Act of 1930. The single judge in Reap. Dec. 4580 found the dutiable value to be the United States value as defined in section 402 (e) of said tariff act, and found that value to be $3,529.92.

The statute (section 402 (a) of the Tariff Act of 1930) provides that the value for duty purposes shall be the foreign value or the export value, whichever is higher; that if neither of those values can be satisfactorily ascertained by the appraiser then the United States value shall be taken; and that in the absence of any of the values mentioned above, the value shall be based upon the cost of production. Said section 402 defines the different values named in sections (c), (d), (e), and (f) thereof.

The question of export value is not involved in the instant case as the record shows that the importer is the exclusive agent in this country for the foreign manufacturer.

The Government, the appellant herein, claims that the evidence does not negative the existence of a foreign value for this machine, and, further, that the importer has not sustained his burden of proving all the elements of United States value as defined by the statute. Alternatively, it is claimed that the presumption of correctness of the local appraiser's finding not having been overcome by the importer, such presumptively correct appraised value should have been found to be the dutiable value.

The contentions of the appellee, as set forth in its brief, are as follows:

(1) That no foreign value existed for the instant machine since such or similar machines were not freely offered for sale either for home consumption in Germany or for export to countries other than the United States;

(2) That imported machines such as or similar to that herein was freely offered for sale to all purchasers in the United States;

(3) That the United States value as represented by the price at which such or similar imported machines were freely offered for sale to all purchasers in the United States, less statutory deductions, is the proper value; and

(4) That the cost of production as determined by the appraiser, does not conform with the requirements of section 402 (f) of the Tariff Act of 1930.

Judge Dallinger, sitting as a trial judge below, found the following facts:

1. That at the time of the exportation thereof there was no foreign-market value for the merchandise at bar, as the barrel washing machines sold for home consumption in Germany, or for exportation to countries other than the United States, were of a different type of construction, and therefore not similar to the barrel-washing machine at bar.

2. That at the time of the exportation thereof there was no export value for the machine at bar since all sales for export to the United States were made under an exclusive selling agreement between the manufacturer and the importer herein.

3. That at the time of exportation such or similar machines to that involved herein were freely offered for sale to all purchasers in the United States, a single machine being the usual wholesale quantity.

4. That at the time of exportation the price at which such or similar imported machines were freely offered for sale to all purchasers in the United States, in the usual wholesale quantity and in the ordinary course of trade was $5,500 per machine.

5. That the general expenses during the year 1934 in the importation and sale of these machines amounted to 8.97 per centum; that the profit accruing on the sale of said machines amounted to 9.02 per centum; and that the ocean freight on each of said machines amounted to $100.53, and the insurance on each machine amounted to $18.82; and that the customs duty paid on each machine was at the rate of 27½ per centum ad valorem.

From these facts the trial judge found as a matter of law that the proper basis of appraisement was the United States value. He further found that such United States value was $5,500, less the statutory deductions prescribed in section 402 (e), *supra*, as follows:

| | |
|---|---:|
| United States selling price | $5, 500. 00 |
| Less 8 per centum general expenses and 8 per centum profit | 880. 00 |
| | 4, 620. 00 |
| Less Ocean Freight | 100. 53 |
| | 4, 519. 47 |
| Less insurance | 18. 82 |
| | 4, 500. 65 |
| Less customs duties ($4,500.65÷1.275) | 970. 73 |
| United States value and dutiable value | 3, 529. 92 |

We think it is unnecessary and would extend this decision unduly to set out in detail the evidence adduced at the trial below. The Government, in support of its claim that this machine should have been appraised upon the basis of foreign value, produced Exhibits 16, 17, and 18, being entries filed at the port of New York at various dates during the year 1934, which covered identical machines from the same manufacturer, which the importer admitted he had entered at the port of New York on the basis of foreign value. In passing upon the admissibility of the aforesaid exhibits the court made the following statements:

Counsel for the Government contends that said entries should be admitted on the ground that they are admissions against interest. After mature consideration I have decided to admit them as Exhibits 16, 17, and 18, respectively, although I do not consider that they have any real probative value in ascertaining United States value in the instant case.

The Government attorney in offering these entries clearly stated that they constituted some evidence of a foreign value and since the importer had admitted that he entered at foreign value, they amounted to an admission on his part of the existence of a foreign-market value. They were not offered as having any bearing upon the question of United States value. We will therefore examine these documents to determine what they do show.

Exhibit 16 is an entry made April 5, 1934, of a similar machine wherein the value was given as 12,856.50 reichsmarks from which certain nondutiable charges were deducted. On April 11, 1934, an amended entry was presented to the entry division wherein the importer sought to deduct from his original entered value a certain sum of money to make United States value. On May 22, 1934, he presented another amendment to said entry in which he sought to deduct a slightly smaller amount to make United States value. On June 3, 1937, he presented and there was accepted, an entry on the original basis of valuation which amended entry went to liquidation. On the face of the consular invoice we find the statement:

* * * The market value of this merchandise for home consumption in Germany is as follows RMK. 12.850. * * *.

Exhibit 17 consists of an entry made August 1, 1934, wherein the merchandise was entered at $3,552.50, less certain nondutiable charges. An amended entry was presented on June 3, 1937, which was accepted, wherein the importer added a certain amount to his original entered value to make market value. This amended entry went to liquidation. The consular invoice accompanying said entry carries this statement:

This merchandise is manufactured solely for export and is not sold or offered for sale in the home-market.

Exhibit 18 is an entry at a valuation of $3,302.50 made September 24, 1934, from which sum certain nondutiable charges were deducted. An amended entry was presented to the entry division on June 3, 1937, wherein the importer added a certain amount of money to his original entered value to make market value. The consular invoice likewise carries a notation that:

This merchandise is manufactured solely for export and is not sold or offered for sale in the home-market.

The only conclusion which the court feels safe in drawing from these exhibits is that either the importer was very uncertain about what should be the correct value on entry, or that he was having difficulty in entering at a value acceptable to the customs officials. In spite of his statement that he entered at foreign value two of the exhibits carry a clear statement intended to establish there was no foreign-market value, and in Exhibit 16 he tried twice to make entry at the United States value.

The judge below found that there was no foreign value for the machine imported. This finding was based upon his opinion that the record showed that:

The barrel-washing machines sold for home consumption in Germany, or for exportation to countries other than the United States, were of a different type of construction, and therefore not similar to the barrel-washing machine at bar.

We agree with that finding. From the record we think it clearly appears that the barrel-washing machine here involved is of a special type suitable only for the United States and was made solely for this market. Being suitable only for the United States, it is plain that they would not be freely offered for sale in Germany either for home consumption in Germany or for export to countries other than the United States. Therefore, since there are no similar machines offered for sale or sold in Germany for home consumption there or for export to countries other than the United States, no foreign value could be found to exist for the machine here involved.

It is claimed by the importer that identical machines with that here involved were freely offered for sale and sold to all purchasers in the United States, and therefore such offerings and sales constitute the basis for determination of United States value. The single judge below upheld this contention and we agree with his holding on that point.

On the question of wholesale quantity the judge below found that one machine constituted the usual wholesale quantity. This finding is supported by the evidence produced. The Government contends that as the importer's sales of similar machines in the United States were made to breweries who were consumers who purchased for their own use, this constituted a retail quantity and therefore could not

form the basis for a finding of United States value under the statute. With this contention we cannot agree. In the case of *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, T. D. 42216, it was held that the law defining the various values provided for in the statute, does not contemplate that "the wholesale price shall be the price *to wholesalers*, but the price in the usual *wholesale quantities*. The law is not concerned with the persons who buy, but the manner in which they buy." We think this reasoning is applicable to the merchandise now before us. In an article such as this barrel-washing machine which would be used, presumptively, by a brewery or similar plant, it can be easily understood that one would constitute the usual wholesale quantity. Of the 21 sales noted in Collective Exhibit 1 and Exhibit 2, 17 sales were made of a single machine, one sale was made of two machines, and one sale of three machines to a customer. It therefore clearly appears that for sales in the United States one machine constituted the usual wholesale quantity.

The Government further contends that in arriving at the United States value the court below wrongfully accepted the amount testified to by the importer and his employee as "reasonable general expenses" and "profit" deductible from the basic selling price of such machines. This contention is based upon the fact that the importer in arriving at these amounts made an allocation, after this litigation had commenced, and that such allocation is not competent evidence as to those deductions. The importer testified that during 1934, the year in which this importation was made, he conducted three kinds of business in the same office, viz, the importation and sale in this country of beer-barrel washing machines, the sale on commission basis of malt, and the importation and sale in this country of hops. He further testified that from a study of the expenses incurred in the conduct of these three businesses, he allocated one-third of his expenses to the beer-barrel washing machinery business, one-half to the malt business, and one-sixth to the hops business. He produced in evidence a memorandum prepared by his stenographer and bookkeeper in which were itemized the expenses incurred in the three parts of his business. There is nothing to indicate that this allocation was contrary to the facts or was not made in good faith, and from an examination of the evidence we fail to find that it was erroneous or unfair. In arriving at this conclusion we have taken into account the fact that the importer's establishment was a relatively small one and that he did not maintain a staff of expert cost accountants, but that the books were kept by one employee who also acted as stenographer and who testified at the trial. In any event there is no testimony in the record to indicate that these charges were not reasonable general expenses for operating this branch of the importer's business. We therefore find that the maxi-

mum amount of 8 per centum for profit and 8 per centum for general expenses allowed by the statute was properly deducted by the court below.

The Government further alleges in its brief that the amount deducted for duty is erroneous in that the single judge arrived at that amount by mathematical calculation whereas the amount of duty actually paid on this particular machine is shown by Exhibit 4 in evidence. On that point we observe that the amount of duty actually paid as *estimated* duty was based upon a percentage of the valuation arrived at by means of the cost of production method, provided for in section 402 (f) of the Tariff Act of 1930, whereas the United States value for which the importer is contending, and which was found by the court below to be applicable, results in a different amount or value upon which to base the percentage levied by the statute as duty. Therefore the contention of the Government is untenable.

It is noted, also, that the appraiser in the instant case stated that he appraised on the basis of cost of production because he could not satisfactorily determine the existence of a foreign or export value. He did not state that he could not find United States value. The statute, section 402, *supra*, provides that the cost of production method can be resorted to only when the foreign, export, or United States values cannot be satisfactorily ascertained. There is no proof that the appraiser could not ascertain the United States value, and therefore, upon the record, he was without authority to adopt the cost of production.

For the foregoing reasons we find that the court below was correct in finding that the proper value was the United States value and that such value was, as stated above, $3,529.92. The decision below is therefore affirmed.

Judgment will be rendered accordingly. It is so ordered.