RAPHAEL WEILL & Co. *v.* UNITED STATES

AND

UNITED STATES *v.* RAPHAEL WEILL & Co.

**No. 6069.**—Invoice dated Paris, France, August 25, 1938.
Certified August 25, 1938.
Entered at San Francisco, Calif., September 21, 1938.
Entry No. 2501.

First Division, Appellate Term

(Decided November 14, 1944)

*Lawrence & Tuttle (George R. Tuttle* of counsel) for the importer.
*Paul P. Rao,* Assistant Attorney General *(Daniel I. Auster,* special attorney), for the United States.

Before OLIVER, WALKER, and COLE, Judges

COLE, Judge: The French Republic, on January 1, 1937, enacted the French Fiscal Reform Bill imposing a tax on certain transactions involving different kinds of merchandise. In this case, we are concerned with the administration of the tax as it relates to the appraisement of imported merchandise for tariff purposes. The issue was presented in reappraisement proceedings before Cline, J., who found (Reap. Dec. 5935) foreign value, section 402 (c) of the Tariff Act of 1930 as amended by the Customs Administrative Act of 1938 (19 U. S. C. 1940 ed. §1402 (c)), to be the proper basis for appraisement, and held the appraised value, which included the tax item, to be the proper dutiable value.

Both parties applied for a review of said decision under authority of section 501 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1501). The importer seeks to reverse the finding of the single judge, assigning eight errors with reasons therefor. The Government's cross-appeal assigns one error, which is predicated upon rulings by the trial court on the admissibility of certain testimony.

We examine, first, the cross-appeal of the Government, defendant below, which is limited to this statement filed under Rule XXXVIII

of this court. "The Court below erred: 1. In admitting, over Government objection, the testimony of Patrick B. Devine and Paul H. Watson, due exception thereto being noted." Importer-appellee questions the adequacy of this assignment "for the purpose of obtaining review of the trial court's rulings."

Before discussing the point raised by importer's counsel, it is proper at this time to note that so far as said Paul H. Watson's testimony is concerned, there is none in the present record which was admitted over Government objection. As a matter of fact, Mr. Watson was permitted to state only that he has been the appraiser of merchandise at San Francisco since 1938. Objection by Government counsel to further questioning was sustained by the trial judge. The quoted assignment of error can relate, therefore, only to the testimony of said Patrick B. Devine.

While the assignment is entirely too general and when read in connection with the record leaves the court without the specificity that should accompany allegations of this character, we are nevertheless passing upon the same. We do so because when the record is stripped of much of the colloquy between counsel and the court, and is boiled down to the brief part thereof, comprising the actual testimony of the witness, it is true that in the main the importer's inquiry before the court below was of the acting appraiser of the instant merchandise, whose official action is recognized by the statute as presumably correct, and is immune, in accordance with earlier decisions, from any inquiry as to the method by which the conclusion was reached. To more accurately state the situation, we quote from Government-appellant's brief:

It is the contention of the Government that the numerous questions addressed to Examiner Patrick B. Devine * * * relate to matters connected with the appraisement and intend to impeach or impair the appraisement, and that such means or methods may not be employed in reappraisement cases.

Said witness Devine testified that foreign value is the basis of the appraisement, that he gave no consideration to export value, and that he did not know whether or not an invoice statement, hereinafter discussed, was true. Asked whether he had any knowledge, at the time of his appraisal, concerning "the price at which merchandise such as is covered by the invoice was sold in France for home consumption to purchasers other than producers," the witness answered, "At that part of the importation I cannot say positively I did. I know I had information on particular items on this invoice, but I do not know whether it was at the time of this importation or not. Now, we have quite a few pages of it on the invoice, which I had some information on at some time or other. But, I cannot say whether I had it at the time of importation of this merchandise. *There is nothing to show that I used that information.*" Permitting the witness to testify

to the extent indicated, did not, in our opinion, violate the rule against a disclosure of the method used in arriving at the appraised values of the several items in question. Accordingly, we find no error in rulings by the trial judge, admitting the appraiser's testimony.

Disposing of the errors assigned by appellant-importer, the following disclosures from the record seem pertinent: The shipment in question was comprised of infants' dresses, wool wearing apparel, handkerchiefs, embroidered wool wearing apparel, corsets and wearing apparel made of feather. It was exported from France on August 25, 1938, and entered at the port of San Francisco on September 21, 1938. Entry, at the invoice value of each item, plus 8.7 per centum, representative of the French tax, was made under duress, section 503 (b) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. §1503 (b)), to meet similar advances made in test cases pending at the ports of Los Angeles, San Francisco, and New York. Appraisement was made at the entered values. The importer claims that the said tax is not part of the dutiable value of the merchandise.

The evidence before us includes the oral testimony of the appraiser, and the records in *W. J. Byrnes & Co.* v. *United States*, 3 Cust. Ct. 553, Reap. Dec. 4631, and *Associated Merchandising Corp.* v. *United States*, 5 Cust. Ct. 604, Reap. Dec. 5050, both of which were incorporated by consent. The *Byrnes* case, *supra*, contained six special agents' reports dealing with the scope of the said French Fiscal Reform Bill. The court found the evidence to be insufficient to overcome the presumption of correctness attached to the appraiser's finding which included the tax item. The *Associated Merchandising Corp.* case, *supra*, included a deposition of the managing director of the French exporter who admitted that the application of the tax "is so intricate that I would not call myself familiar with every detail of its application." Attached to the said deposition were printed copies of two decrees of the President of the French Republic. One (exhibit A) is a translation of the law with an explanation of its provisions by the Minister of Finance. The other (exhibit B) is a document entitled, "Decree Codifying the Text of Laws Concerning Taxes at the Source," relating to taxes described in the said exhibit A. The case was ultimately abandoned by the plaintiff.

It should be emphasized at this point that the importer is the appealing party and therefore has assumed the burden of proving every factor included within the statutory definition, section 402 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402). *United States* v. *T. D. Downing Co.*, 20 C. C. P. A. 251, T. D. 46057, stated this responsibility as follows:

We have had frequent occasion to endeavor to point out just what is required and upon whom the duty of proof primarily rests in appeals to reappraisement. In *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 165, T. D. 45276,

we discussed a number of questions relating to reappraisement procedure at considerable length and cited numerous cases in support of the rules there stated. We shall not here restate the principles of law and practice there outlined.

It is sufficient here to bear in mind that the importer having appealed, it was incumbent upon it to show (1) the foreign value and (2) the export value, to the end that the higher might be taken as the dutiable value, or to show (1) a foreign value and the nonexistence of an export value, or (2) an export value and the non-existence of a foreign value. Being the appealing party, it was incumbent upon it "to meet every material issue involved in the case." *Meadows, Wye & Co. (Inc.) et al.* v. *United States,* 17 C. C. P. A. (Customs) 36, 42, T. D. 43324.

Foreign value, section 402 (c) as amended, *supra,* which the appraiser adopted, is defined as follows:

The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similiar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Export value, section 402 (d) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402 (d)), which the importer claims to be the proper basis for appraisement, is provided for in the statute as

* * * the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Appellant-importer's case rests chiefly, if not entirely, upon the judicial construction to be given a statement, which, the appraiser testified, he "had no reason to doubt," placed on the invoice by rubber stamp and reading as follows:

I hereby certify that merchandise the same as or similar to that described in this invoice is freely offered for sale in France and is ordinarily sold for home consumption to purchasers classified for the purposes of the French fiscal reform law as "producers." That the prices at which such sales made to "producers" on the date of exportation are no higher than the invoice prices.

The construction sought by importer is that sales by "producers" to "dealers for resale as is" constituted the ordinary course of trade in wholesale quantities in the principal market of France for merchandise such as or similar to that in question. Such sales were exempt from the French tax. Therefore, the invoice values are truly representative of dutiable values.

The terms "producers" and "dealers," as well as "manufacturers"

and "consumers," are used in the French Fiscal Reform Bill to describe different categories of persons engaged in transactions which may be subject to the tax in question.

To obtain the interpretation hereinabove set forth, importer's counsel argue here, as they did before the single judge, that we can take judicial notice of the fact that sales of the instant merchandise to *consumers* are retail sales and therefore not in wholesale quantities. The lower court refused to do so, saying, "The court cannot take judicial notice of things which are not of common knowledge, and, therefore, can not find that the sales by producers in France were sales at retail."

The trial court was clearly right in declining to take judicial notice of the situation claimed. All of the authorities cited by appellant-importer in support of its contention as to judicial notice of sales to consumers are clearly not applicable, and following our very thorough and careful research it is not surprising that cases more informative were not cited. It is important in a discussion of this character to recall the sane admonition laid down in *United States* v. *Richard & Co.;* 15 Ct. Cust. Appls. 143, T. D. 42216, that "the law is not concerned with the persons who buy, but the manner in which they buy."

The importer (plaintiff below) failed to offer any positive proof relating to the different phases of the present issue. It is this omission of evidence in the record before us which prevents an analogy being drawn, as sought by importer's counsel, between the instant case and *Pitcairn Corp.* v. *United States,* 12 Cust. Ct., 358, Reap. Dec. 5976, involving the applicability of the so-called British purchase tax to the dutiable value of imported merchandise. In the *Pitcairn* case, many vitally important facts were stipulated. In addition, the court was favored with affidavits and other documentary evidence from the different classes of dealers in the English market, as well as special agents' reports, directed toward showing the manner in which the tax is administered in the foreign market. The comparatively meager proof herein does not supply a comparable factual basis from which to discuss the legal questions in the manner they are reviewed in the *Pitcairn* case, *supra*.

Importer's counsel further contend that statutory foreign value could not exist for the instant merchandise because it necessarily sold at different prices—some transactions being subject to the tax and others exempt therefrom. *United States* v. *Ash,* 23 C. C. P. A. 360, T. D. 48211, and *United States* v. *Zellerbach,* 28 C. C. P. A. 303, C. A. D. 159, are cited to support this proposition, but each is distinguishable from the instant case in the light of the present record. In the *Ash* case, *supra*, the court found that sales in Germany to one class of purchasers, i. e., consumers, were restricted, and therefore held no

foreign market to exist. No question of a controlled French market is presented here. The *Zellerbach* case, *supra*, turned on the fact that the seller offered his merchandise at one price although he received different amounts from purchasers due to various allowances for freight. In holding that the amounts paid by the purchasers were not controlling, the court said:

\* \* \*. The mandate of the statute does not provide that there shall be one price received by the seller, but that the price accepted as foreign value shall be that at which such or similar merchandise is freely offered to all purchasers.

It is settled law that in a free and open market, notwithstanding the presence of different prices, the dutiable value of merchandise is the price at which anyone could buy who cared to. *United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308.

The record before us is not sufficiently adequate to warrant further discussion. Clearly, the importer has failed to make out a *prima facie* case. Consequently, the appraised values, being presumptively correct, section 501, *supra*, must prevail.

The judgment of the lower court is affirmed. Judgment will be rendered accordingly.