(Reap. Dec. 10109)

FRED BAUMGARTEN *v.* UNITED STATES

Entry Nos. A–866; A–32.

(Decided November 27, 1961)

*James M. Roberts* for the plaintiff.

*William H. Orrick, Jr.,* Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

WILSON, Judge: These appeals for reappraisement involve the dutiable value of certain metal pencil sharpeners, exported from West Germany on June 20, 1958, and April 30, 1959. The articles in question were entered at the unit prices in deutsche marks, represented by the same unit figures listed in deutsche marks on the invoices under the heading "current price home consumption." Upon entry, the importer added one-third to make market value, less 2 per centum cash discount, plus packing. The merchandise in question was appraised as entered.

Plaintiff, in the appeals, apparently contends that the proper dutiable values are the entered values, less 25 per centum discount, or, alternatively, the entered values, less 10 per centum, less 2 per centum cash discount, plus packing. Essentially, the issue here is whether an allowance of 25 per centum discount, claimed by the plaintiff as that given to so-called "wholesalers," or, alternatively, an allowance of 10 per centum, claimed given to so-called retailers in purchases of large quantities, should be made in the determination of the value of the involved merchandise.

It was agreed by both parties that foreign value, as that value is defined in section 402a(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, is the proper basis for appraisement of the imported merchandise.

Section 402a(c) of the Tariff Act of 1930, as amended, *supra*, defines foreign value as "the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States."

In support of his contentions, the plaintiff himself testified, but did nothing more than identify himself as the importer of the merchandise and as a distributor of such merchandise "mostly to stationers, to retailers and to the jobbers," stating, in this connection, that he sells "most of the merchandise to the wholesale trade to jobbers, and they in turn sell to the retail stores" (R. 7–8). The plaintiff also introduced two exhibits, consisting of two affidavits, one executed by T. Paul Möbius, the exporter of the pencil sharpeners under consideration, and the other executed by a person on his behalf. Attached to plaintiff's exhibit 1 are what the affiant claims to be complete lists of sales of pencil sharpeners made by him for the periods stated "in the usual and regular course of business." The attached lists show several hundred sales. Each entry shows the name of the purchaser, the date of purchase, the quantity purchased in dozens, the percentage of discount, if any, allowed, and the type of purchaser, whether wholesaler or retailer, to whom the merchandise was sold. There is no evidence whatever in these sales lists to indicate any basis for classification of the purchasers as wholesalers or retailers. The said list indicates that customers arbitrarily designated "wholesalers" received a 25 per centum discount on their purchases, whether the amount purchased consisted of 1 dozen or over 700 dozen, the amount of the purchases ranging from 1 dozen to several hundred dozen, with nothing whatever set forth to indicate what constituted the usual wholesale quantities in the ordinary course of trade. Numerous sales are shown to unknown purchasers in various quantities at the list price, with no discount whatever. Plaintiff's exhibit 1, with the attached lists, shows that the seller arbitrarily listed certain buyers, regardless of the quantity of merchandise purchased, as "wholesalers," and certain others who purchased in numerous instances more than the purchasers designated "wholesalers" arbitrarily as "retailers," and that the seller made numerous sales at list prices to numerous buyers, without identifying them as either wholesalers or retailers. The list of sales in plaintiff's exhibit 1 discloses, therefore, that the 25 per centum discount, which was given only to wholesalers, depended solely upon the status of the purchasers and not upon the quantities purchased. Accordingly, the merchandise in question was not freely offered at a 25 per centum discount to all purchasers, in the usual wholesale quantities and in the ordinary course of trade, as required by the statute, and this item is not a proper allowance in the determination of the value of the merchandise.

Plaintiff's exhibit 2 is really inconsistent with plaintiff's exhibit 1. The affiant in plaintiff's exhibit 2 states that a 5 per centum rebate was given to retailers whose orders amounted to 100 DM, that a 10 per centum rebate was given to retailers whose purchases amounted to 250

DM, and that no discount was given to retailers who purchased in amounts under 100 DM. The affiant, in said exhibit 2, further recites that: "The list prices are also valid for orders from wholesalers, ex works packing extra, less 25% rebate. The list prices, less 25% rebate are the wholesale value and are freely offered to wholesalers in Germany." Plaintiff's alternate claim that the manufacturer's list price, less a discount of 10 per centum, allegedly given to "retailers" whose orders amount to 250 DM, should be taken as the proper value for the involved merchandise, is likewise without merit. In this regard, plaintiff has failed to establish that such sales to those given the category of "retailers" at the claimed discount were in the "usual wholesale quantities," and, accordingly, has again failed in the burden of proof imposed upon him under the statute. On the other hand, the record, in my opinion, supports a finding that the manufacturer's list price, represented by the entered value, is the price at which the merchandise was freely offered to *all* purchasers in the usual wholesale quantities and in the ordinary course of trade. In any event, plaintiff's exhibit 2 consists of conclusions which have on numerous occasions been rejected by our appellate court as having no probative value. (See *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495; *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593; *United States* v. *Fisher Scientific Co.*, 44 C.C.P.A. (Customs) 122, C.A.D. 648; *United States* v. *Baar & Beards, Inc.*, 46 C.C.P.A. (Customs) 92, C.A.D. 705.)

The plaintiff has been completely misguided in his approach to this case by confusing the term "wholesaler" with the provision of the law referring to "all purchasers * * * in the usual wholesale quantities and in the ordinary course of trade." In a long series of cases, our appellate court has uniformly held that "The law is not concerned with the persons who buy, but the manner in which they buy," and, furthermore, that the merchandise must have been offered at a certain price to all purchasers, not just to a select group. *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, T.D. 42216; *Adolph Goldmark & Sons Corp.* v. *United States*, 22 C.C.P.A. (Customs) 358, T.D. 47378; *United States* v. *Mexican Products Co.*, 28 C.C.P.A. (Customs) 80, C.A.D. 129; *United States* v. *Glanson Co.*, 47 C.C.P.A. (Customs) 110, C.A.D. 740.

In the *Richard & Co.* case, *supra*, the court stated the law as follows, page 147:

It is argued because sales to wholesalers are all made at the same price that therefore this price thus becomes the wholesale price. But it will be observed that the statute does not thus establish the wholesale price. Section 402(b) [now section 402a(c), *supra*] does not provide that the wholesale price shall be the price to *wholesalers*, but the price in the usual wholesale quantities.

The law is not concerned with the persons who buy, but the manner in which they buy. [Italics quoted.]

In the *Glanson Co.* case, *supra*, the *Richard & Co.* case, *supra*, was cited with approval, the court holding, page 113:

The importer contends that if a foreign value is to be found here it should be on the basis of the price offered to jobbers and wholesalers since the record shows that the majority of the manufacturer's sales were made to purchasers of that type. However, as was said in *United States* v. *Richard & Co.*, 15 CCPA [*sic*] 143, T.D. 42216, with respect to foreign value, "The law is not concerned with the persons who buy, but the manner in which they buy." The comparative volume of sales is pertinent where the merchandise is sold at different wholesale prices depending upon the quantity purchased, but where, as is the case here, the price to any given purchaser is the same regardless of quantity, it is immaterial what classes of purchasers buy the most. In both *American Shipping Co.* v. *United States*, and *United States* v. *Mexican Products Co.*, *supra*, the foreign value was found to be the price charged to the least favored class of purchasers, notwithstanding the fact that most of the sales were made to more favored purchasers who paid lower rates.

In this case, the evidence is wholly insufficient to discharge the burden placed upon the plaintiff of overcoming the presumption of correctness which, as a matter of law, attaches to the appraisement fixed by the appraiser. Nor does the evidence even tend to establish any other foreign value than that placed upon the goods by the appraiser.

For the reasons above set forth, I find as matters of fact:

1. That the involved merchandise consists of metal pencil sharpeners, exported from West Germany on June 20, 1958, and April 30, 1959.

2. That such or similar merchandise was freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, at the manufacturer's list price, represented by the entered value, in each case.

3. That the evidence adduced by the plaintiff fails to establish that the appraised value is erroneous or that other values claimed by the plaintiff are correct.

4. That such or similar merchandise was not freely offered for sale for export to the United States.

I conclude as matters of law:

1. That there is no export value, as that value is defined in section 402a(d) of the Tariff Act of 1930, as amended, for the importations at bar.

2. That foreign value, as that value is defined in section 402a(c) of the Tariff Act of 1930, as amended, is the proper basis for appraisement of the merchandise in question.

3. That the value returned by the appraiser, which is presumptively correct, has not been overcome.

4. That the proper value of the involved merchandise is the entered unit value in German deutsche marks, plus one-third, less 2 per centum cash discount, plus packing, in each case, as appraised.

Judgment will be entered accordingly.