UNITED STATES *v.* DAVIES, TURNER & Co. (No. 2661)[1]

1. REAPPRAISEMENT REVIEW—SUFFICIENCY OF EVIDENCE.

The appeal provided for by section 501, Tariff Act of 1922, to the United States Court of Customs Appeals from the judgment of a board of three general appraisers on review of an appraisement by one general appraiser, is not on the evidence, and the judgment of the board will be affirmed if supported by any substantial evidence. *Metz & Co.* v. *United States,* 13 Ct. Cust. Appls. 412; T. D. 41340. Where it appears that though the foreign market price might have been controlled as to smaller quantities for domestic sales, it was free as to larger ones for export, the judgment of the Board of United States General Appraisers, affirming the appraisement by one general appraiser of a larger one at the invoice and entry value, with proof of a similar sale at the same price and about the same time, is affirmed.

2. EVIDENCE ADMITTED WITHOUT OBJECTION.

A letter introduced in evidence before the board by importers without objection by the Government was proper to be considered by the board; and an objection to it, originating in this court, is too late.

---

[1] T. D. 41430.

3. CONTROLLED PRICE IS NOT MARKET VALUE.

A controlled price is not foreign market value, for the reason that the merchandise is not freely offered for sale. *Goodyear Tire & Rubber Co.* v. *United States*, 11 Ct. Cust. Appls. 351; T. D. 39158. But a price which is only partially controlled, and that for domestic sales only, is not within the meaning of this rule.

## United States Court of Customs Appeals, February 25, 1926

APPEAL from Board of United States General Appraisers, Circ. Reap. 35767

[Affirmed.]

*William W. Hoppin* and *Charles D. Lawrence*, Assistant Attorneys General (*J. G. Lerch*, special attorney, of counsel), for the United States.
*Hamilton, Eaton & Blakemore* for appellees.

[Oral argument January 22, 1926, by Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

This is an appeal by the Government under the provisions of section 501 of the Tariff Act of 1922 from the judgment of a Board of General Appraisers sitting in reappraisement.

The merchandise involved is beeswax imported from France early in 1924.

The entered value was francs 950 per 100 kilos. The appraiser advanced the value to francs 11.50 per kilo including the sales tax.

Thereupon importers appealed to reappraisement and a single general appraiser sustained the entered value. On the motion of the Government a rehearing was granted, further evidence received, and the same general appraiser found the dutiable value to be francs 11.50 per kilo, sales tax included, thereby sustaining the action of the local appraiser.

Importer thereupon appealed to the Board of General Appraisers, which tribunal reversed the judgment of the single general appraiser and found the dutiable value to be francs 950 per 100 kilos as entered.

We quote the material part of the board's opinion:

It is very evident from the record that the advance of the appraiser was made upon the theory that the quantity of beeswax covered by the importation, there being over 5,000 kilos, was an unusual quantity, and that for that reason the importers had purchased it at a price below that prevailing in the market for usual wholesale quantities. The evidence in the record shows that these importers and other importers have brought into the United States other shipments of equally large quantities. It is also evident from the record that while the usual sales in France are for much smaller quantities and that the price for lots on 100 kilos was francs 1,150 on the date of exportation of this merchandise, it is also set forth in a letter in evidence, Exhibit 3, that for an order of 2,000 kilos at or about the time of the exportation of this merchandise, the price was francs 950 per 100 kilos.

It is also apparent, we think, from the evidence, that the sale price in France of this beeswax is graded according to the quantity purchased and that any purchaser placing an order for 2,000 or more kilos for domestic consumption or for export at the time of exportation of this shipment, could have obtained it at the price of francs 950 per 100 kilos.

We therefore find as a fact that the market value for home consumption or for export of this beeswax was, on the date of exportation, in quantities of 2,000 kilos or more, francs 950 per 100 kilos, and reverse the decision of the general appraiser accordingly.

This importation covered 5,000 kilos of beeswax which was purchased from Chalons-Desforges, a manufacturer in France, and was exported March 19, 1924.

The issue raised by this appeal is stated in the Government's brief as follows:

Is there any evidence before the board to justify the finding made and if so, did the board upon the finding of fact made in its decision err in adopting a value at which the merchandise was freely offered for sale in large quantities for export when the value in the usual wholesale quantity for home consumption (much smaller quantities than for export) was much higher?

Section 402 of the act, which it is unnecessary to quote, provides in substance that the foreign as well as the export value of imported merchandise shall be the market value or price at which such or similar merchandise is freely offered for sale, or for sale for export to the United States, as the case may be, to all purchasers in the principal markets in the country from which exported in the usual wholesale quantities and in the ordinary course of trade, included in which are, or to which shall be added, certain other charges and expenses concerning which there is no controversy here.

As appears from its quoted opinion the board in effect found that 2,000 or more kilos were usual wholesale quantities in which this beeswax, in the ordinary course of trade, was at the date of exportation, freely offered for sale to all purchasers in the principal markets of France.

Section 501 of the act provides that on an appeal of this kind to this court, questions of law only shall be reviewed. The issue here, therefore, reduces to the question of whether the above finding of the board is supported by any substantial evidence *Metz & Co.* v. *United States*, 13 Ct. Cust. Appls. 412, T. D. 41340, and cases cited.

The Government contends that there is no evidence to support this finding. It urges that the evidence conclusively establishes that such usual wholesale quantities were much less than 2,000 kilos, and were, in fact, 100 kilos.

The printed record contains the testimony of witnesses offered by the importer. Therefrom it appears that appellants are, and for many years have been, large importers of beeswax; that Chalons-Desforges are large manufacturers thereof; that, beginning at least

as early as 1922, importer had frequently purchased in France similar beeswax in quantities of more than 2,000 kilos; that competitors of importer in this country bought beeswax in similar quantities; and that since the importation in question was made, importer had made another as large. The witnesses did not, however, undertake to say that such quantities were the usual wholesale quantities, in the ordinary course of trade in France, because they had never been there, but did say that quantities of 2,000 or more kilos were not unusual quantities for them to purchase there and also that the larger lots were cheaper than the smaller ones.

Importer offered in evidence the report dated June 16, 1924, of a special customs agent who had, under the directions of customs authorities, made investigations in France touching the matter of the market value of this importation there, and also a letter from Dumont, a managing director of Chalons-Desforges, written to importer after the merchandise in this case was entered, both of which were admitted without objection on the part of the Government.

This letter, among other things, contains the statements that, in March, 1924, the price at which the manufacturer was selling like beeswax, in quantities of about 100 kilos, was 11.5 francs per kilo; that, in amounts of over 2,000 kilos, it was 9.5 francs per kilo; that, in February, 1924, the manufacturer had sold it to purchasers in Belgium at 10 francs per kilo, in quantities from 200 to 500 kilos; that it had quoted the price of francs 9.5 per kilo on a large order to go to New York; that the price of 11.5 francs per kilo for 100 kilos could not logically be the same as on an order for 5,000 kilos; that the price of 9.5 francs was "often made at the time of embarkation, not only by us, but by competitive concerns," and that the books of the manufacturer were at the disposal of the American Customs Service.

The Government argues that whatever is contained in this letter, being, it says, a self-serving declaration, is not evidence of market value.

We think, in view of all the circumstances, it has some probative effect on the issues and, it having been received in evidence without objection on the part of the Government, the board was entitled to consider it for what it was worth.

It appears from the special agent's report that the same was based wholly upon information obtained from the books of Chalons-Desforges and from Mr. Dumont. These books, according to the report, show that in March and April, 1924, the manufacturer had filled two orders to concerns other than importer of from 3,000 to 5,000 kilos each, for shipment to the United States, one at francs 9.50 per kilo, c. i. f., Boston, the other at francs 18 per kilo, cost

and freight, to New York. With reference to the last-mentioned price, Mr. Dumont explained to the agent that that high price was charged because he knew "from the tone of the purchaser's cablegram that they were badly in need of his merchandise." It also appears from the report that, April 9, 1924, the manufacturer filled two orders for shipment to Belgium of 311 and 503 kilos at francs 10 per kilo, net; that, from March 15 to April 1, 1924, the manufacturer filled five orders to consumers in France, varying from 156 to 343 kilos, at prices varying from francs 11 to 11.50 per kilo, net.

The special agent did not report what the trade in France regarded as the usual wholesale quantity of this beeswax in the ordinary course of business, or that he had tried to ascertain or had ascertained the same, apparently leaving that to be inferred from the sales made by the manufacturer as reported by the agent. The agent did state that he ascertained from Dumont that there was a syndicate, with headquarters near Paris, which controlled the prices of beeswax, apparently for home consumption; that in case a competitor, not a member of the syndicate, quoted a lower price, the syndicate authorized its members to meet such reduction; that the price fixed for home consumption had no bearing on export prices and the "manufacturers were free to offer their wax for export at whatever prices they cared to."

The special agent's report does not show whether or not the manufacturer's books disclosed other sales, at about the time of the exportation in this case, of beeswax in lots of between 500 and 2,000 kilos, or why he did not try to ascertain what were regarded as usual wholesale quantities of this commodity by the trade in France.

It may be assumed that an inference may be drawn from what he does report that in quantities of from 100 to about 500 kilos the controlled market value or price in France was, as the Government claims, practically francs 11.50 per kilo, but a controlled price is not necessarily the price at which a commodity can be said to be *freely offered for sale to all purchasers*, especially when it appears, as in this case, that the syndicate members were at liberty to meet any lower price made by nonsyndicate competitors. So far as this phase of the case is concerned it is doubtful if, when considered in connection with the letter from the manufacturer before referred to, the evidence establishes that there was any foreign market price or value for quantities of less than 500 kilos. It rather appears that syndicate manufacturers charged the controlled price if they could get it and, if not, took less.

In *Goodyear Tire & Rubber Co.* v. *United States*, 11 Ct. Cust. Appls. 351, T. D. 39158, we somewhat exhaustively considered the question as to whether or not a controlled price constituted foreign market value, and pointed out that such price was not such market

value within the meaning of that term as defined by law, because merchandise, the price of which was so controlled, was not freely offered for sale in contemplation of law. It is true that in that case the control was probably more complete and was brought about in a different manner than in this, but the purpose, if not the effect thereof, certainly is substantially the same in the two cases.

The Government contends that the special agent's report having been introduced in evidence by the importer, must be construed most strongly against it. With this contention we disagree, because the question here is whether there is any substantial evidence to support the board's finding; it matters not by whom it was produced.

We think on the whole record before us it can not be said, as matter of law, that there is no substantial evidence to support the finding of the board.

Its judgment that the market value for home consumption or for export of this beeswax was, on the date of exportation, in quantities of 2,000 kilos or more, francs 950 per 100 kilos, is therefore *affirmed.*