The judgment of the United States Customs Court is *affirmed*.

United States *v.* Philipp Wirth et al. (No. 3429)[1]

United States Court of Customs and Patent Appeals, May 23, 1932

*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh*, special attorney, of counsel), for the United States.

*Lamb & Lerch* (*J. G. Lerch* of counsel) for appellees.

[Oral argument February 8, 1932, by Mr. Lawrence and Mr. Lerch]

Before Graham, Presiding Judge, and Bland, Hatfield, Garrett, and Lenroot, Associate Judges

Hatfield, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court in reappraisements 55526–A, etc.

The involved merchandise consists of asbestos filters and parts thereof exported from Germany.

---

[1] T. D. 45705.

The court below affirmed the judgment of the trial court holding that the merchandise had no export value, and that its dutiable value was its foreign value, which, it was held, equaled the—

unit appraised prices less a discount of 15 per centum and a cash discount of 3½ per centum, adding thereto a sales tax, and packing charges as returned by the appraiser.

It appears from the record that the majority of sales of the involved articles are made by the manufacturer direct to the consumers. The manufacturer maintains laboratories and experts for the making of tests and analyses, biological and chemical, for those customers, and advises them as to the kinds and sizes of machines best adapted to their needs. The machines are shipped to them in a knocked-down condition and are installed and tested by the manufacturer's mechanics. Furthermore, upon application, the manufacturer sends out experts to instruct the consumer's employees as to the proper use of the filters. All such services are included in the initial prices paid by those customers.

It further appears that the manufacturer also sells to so-called dealers and jobbers, approximately 45 in all, who in turn sell to the consumers. Certain discounts are allowed to the dealers and jobbers. However, such discounts are not uniform but vary according to the importance of the purchaser and the character of the article sold. If the article is a competitive one the discount is higher, as much as 25 per centum being allowed on the list price. These facts are conceded by counsel for appellees.

It also appears from the record that the wholesale quantities vary according to the size and character of the articles; that dealers and jobbers are not permitted to export, and that they must sell at prices shown in the manufacturer's catalogue or price lists.

The court below held, and correctly so we think, that the sales by the manufacturer to the *consumers* included services and maintenance of the articles purchased; that there was no evidence as to the usual quantities so sold, and that such sales did not constitute foreign value, as defined by section 402 (b) of the Tariff Act of 1922, which reads:

SEC. 402. (b) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

However, we are unable to concur in the holding of the court below that the sales by the manufacturer to *dealers and jobbers* constitute

foreign value. The discounts to them vary according to their "importance and standing." The prices, therefore, are not uniform. Furthermore, the jobbers and dealers are required to resell at prices dictated and controlled by the manufacturer. They are prohibited from exporting. It is upon these conditions only that the goods are sold to them. Obviously, then, the evidence discloses a controlled, not a free and open, market, and such restricted sales are not indicative of foreign value. *Goodyear Tire & Rubber Co.* v. *United States,* 11 Ct. Cust. Appls. 351, T. D. 39158; *United States* v. *Davies, Turner & Co.,* 13 Ct. Cust. Appls. 547, T. D. 41430; *United States* v. *International Forwarding Co.,* 13 Ct. Cust. Appls. 579, T. D. 41436; *United States* v. *Richard & Co.,* 15 Ct. Cust Appls. 143, T. D. 42216.

We must hold, therefore, that there is no substantial evidence of record to establish a foreign value of the merchandise. It was held by the court below, and conceded by counsel for the parties, that the merchandise had no export value. Accordingly, the dutiable value of the merchandise is its United States value, if that can be ascertained. It not, then the cost of production. Section 402 (a).

In view of the fact that the parties and the court below have proceeded upon the theory that there was a foreign value, and as there is no evidence of record of the United States value, nor of the cost of production, as defined by law, we are of opinion that, in order that the parties may have an opportunity to present evidence of such value or cost of production as the facts may warrant, a new trial should be had.

For the reasons stated, the judgment is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.