UNITED STATES *v.* HALF MOON MFG. & TRADING CO., INC. (No. 4276) [1]

United States Court of Customs and Patent Appeals, April 1, 1940

*Webster J. Oliver*, Assistant Attorney General (*Daniel I. Auster*, special attorney, of counsel), for the United States.

*Daniel P. McDonald* for appellee.

---

[1] C. A. D. 115.

[Oral argument February 7, 1940, by Mr. Auster and Mr. McDonald]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

This is a reappraisement proceeding in which the Government has appealed from the judgment of the United States Customs Court, Third Division, affirming the judgment of the single judge appraising certain importations of merchandise for duty at the entered values which purported to be the export values. There is a companion case, styled *United States* v. *Paul J. Pauls* (Suit No. 4277), 28 C. C. P. A. (Customs) 7, C. A. D. 116, decided concurrently herewith. The cases were separately tried and separate opinions have been found necessary, or, at least, proper.

The merchandise consists of bottle caps (also frequently referred to as capsules) imported from Holland. Thirteen entries are involved in the instant case, consolidation for trial having been made, the entries ranging from October 17, 1934 to February 25, 1935. As indicated, entries were made at what purported to be the export values, as defined by section 402 (d) of the Tariff Act of 1930, which reads:

SEC. 402 (d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The local appraiser advanced the entered values, holding that the merchandise had a foreign value as defined in section 402 (c) which was higher than the claimed export value. Section 402 (c) reads as follows:

SEC. 402 (c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The importer appealed for reappraisement and the subsequent proceedings resulted as stated.

The record is quite elaborate. Both parties introduced samples of the bottle caps in evidence. In addition to these the evidence on behalf of the plaintiff comprised Exhibits 2, 3, and 4, consisting of

affidavits of manufacturers in Holland, and Exhibits 5, 6, 7, and 8, which consist of depositions of the managers of the manufacturing companies. The evidence on behalf of the Government comprises a number of reports made by Treasury attachés, selected parts of which, with exhibits thereto, appear in the record as Exhibits 9 to 35, inclusive. There was no elaborate review of the testimony, either by the single judge or by the appellate division. The single judge, after reciting that the evidence consisted of the above-stated matters, said—

From this mass of evidence I find the following facts:

1. That on June 16, 1933, the only manufacturers in Holland of such or similar merchandise to that involved herein made an agreement fixing the prices at which such bottle caps or capsules manufactured by them were to be sold to dealers on and after June 20, 1933.

2. That said agreement provided that in making offers of sale or deliveries it must be expressly stipulated that said dealers are not permitted to resell said bottle caps or capsules below the prices specified therein under penalty of not receiving deliveries from any of said manufacturers.

3. That pursuant to another and subsequent agreement, effective September 1, 1934, it was agreed among said manufacturers to insert in all invoices covering deliveries of said bottle caps or capsules to Dutch buyers, both dealers and users, the following:

These capsules are exclusively for home consumption in The Netherlands and may not be exported except on bottles.

It was further provided that in case of noncompliance therewith, all deliveries to violators, whether resellers or consumers, were to be discontinued.

4. That from July 1934 to May 20, 1936, there were numerous free and unrestricted sales of such or similar bottle caps to countries other than the United States in the usual wholesale quantity and in the ordinary course of trade at prices lower than the entered values herein.

5. That the entered values of the metal bottle caps or capsules covered by these appeals are the prices at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Holland in the usual wholesale quantity and in the ordinary course of trade for exportation to the United States.

In its decision, the appellate tribunal quoted the first three findings of fact, and affirmed such findings, adjudging, also, that the single judge correctly interpreted the law as applied to the facts in holding that there was no foreign value and that there was an export value, correctly represented by the entered value, which was the dutiable value.

As a background for our decision, we deem it proper briefly to make certain statements relative to the facts. In so doing we state nothing different from the findings of fact by the tribunals below. All that we state is either expressed or clearly implied in their decisions. We take the precaution to make the last foregoing statement because it is not the province of this court to find facts in reappraisement proceedings.

It appears that there are only three manufacturers of bottle caps in Holland, and that during the time when the importations here

involved were made there was in force among them an agreement. with respect to inland sales for inland use in Holland, fixing the prices at which such sales would be made, and that this agreement further provided that those to whom sales were made for use in Holland might. not export the caps except after they had been attached to bottles, a. statement to this effect being placed on all invoices. It also provided that the manufacturers, in making offers of sale or delivery to dealers, other than users, in Holland, must expressly stipulate that such dealers. were not permitted to resell the bottle caps in Holland below the prices. specified in the offer, the penalty for a violation by the dealers being that of not receiving deliveries from any one of the manufacturers.. The evidence respecting the foregoing matters is embraced both in the affidavits introduced on behalf of the importers and in various of the special agents' reports. No contradiction of it is found anywhere, and so it is perfectly clear that there is substantial evidence to support. the first three findings of fact quoted, *supra*. In other words, it is. perfectly clear that the market in Holland was a controlled market so far as inland prices and inland use were concerned.

The contentions on behalf of the Government are stated in its. brief as follows:

1. That the alleged restriction of sales to foreign users, consumers, and bottlers: was an inoperative and ineffectual restriction, which did not create a controlled. market, and that the courts below erred in finding that such alleged restriction creates a controlled market.

2. That the courts below erred in not finding and holding that, in the ordinary course of trade and in the usual wholesale quantities, merchandise similar to the imported articles are freely offered and sold for home consumption to users, consumers, and bottlers at prices equivalent to the appraised values.

3. That the courts below erred in not affirming the appraised values.

On the other hand, the importer contends that there was no foreign value because of the restrictions above described.

In arguing the case the Government contends, in substance, that, the dealers referred to, as distinguished from the users, were those parties who were engaged in the wholesale business of buying bottle caps and selling them at a profit, and that the merchandise was freely offered to all such dealers at the prices agreed upon among the three manufacturers. It contends that the users are those who buy bottle caps and affix them to the bottles after the latter are filled, selling same in the ordinary course of trade as an entirety, either for home consumption in Holland or for export. It is urged that they were not engaged in the business of buying and selling bottle caps for profit; that the bottle cap manufacturers knew that such users were exclusively engaged in the business of manufacturing, producing, and selling wines and liquors and had not dealt in bottle caps *per se* either for home consumption or for export; that they knew that the users

would use the bottle caps in the same manner or for the same purpose as a user employed the bottle, and that the restriction imposed, so far as the users were concerned, as evidenced by the notation on the invoices, was ineffectual and would not create a controlled market nor nullify the existence of a foreign value under section 402 (c), *supra*, and the Government further claims that a larger proportion of the caps sold in Holland was sold to users than to dealers.

It is conceded that the sales prices to the dealers were restricted in that the dealers could not resell below an agreed minimum price, but it is urged that the discounts allowed to the dealers were such as to enable them to resell the caps to users at a profit, "because the users could not procure the bottle caps from the manufacturers at a lower price than they could obtain them from the dealers." It is also contended that while the minimum prices at which the dealers might resell were fixed, they were at liberty to sell for higher prices than those so fixed.

Careful consideration has been given to the contentions so made, but we are unable to escape the conclusion that the result sought by the Government would be contrary to the principle of all the decisions in analogous, or partly analogous, cases.

A leading case having a bearing here is that of *Goodyear Tire & Rubber Co.* v. *United States*, 11 Ct. Cust. Appls. 351, T. D. 39158, wherein this court, in an elaborate opinion by the late Judge Smith, entered into a very full discussion respecting controlled markets. It is true that that case is not precisely on all fours with the one at bar as to the facts, but, in principle, we do not find them distinguishable.

A case more nearly in point is that of *United States* v. *Philipp Wirth et al.*, 20 C. C. P. A. (Customs) 94, T. D. 45705. The merchandise there involved consisted of asbestos filters imported from Germany. It was found that some were sold in Germany to consumers, and others were sold to dealers and jobbers, and that the prices at which the sales were made to the latter class of persons were not uniform, and, for that reason, it was held that foreign value had not been established, but we also added—

Furthermore, the *jobbers and dealers are required to resell at prices dictated and controlled by the manufacturer*. They are prohibited from exporting. It is upon these conditions only that the goods are sold to them. Obviously, then, the evidence discloses a controlled, not a free and open, market, and such restricted sales are not indicative of foreign value. *Goodyear Tire & Rubber Co.* v. *United States*, 11 Ct. Cust. Appls. 351, T. D. 39158; *United States* v. *Davies, Turner & Co.*, 13 Ct. Cust. Appls. 547, T. D. 41430; *United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls. 579, T. D. 41436; *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, T. D. 42216. [Italics new here.]

While the decision of that case might perhaps have turned upon the first ground stated, it is nevertheless clear that we also relied

upon the second ground. See also the case of *Meadows, Wye & Co.. (Inc.) et al. v. United States*, 17 C. C. P. A. (Customs) 36, T. D. 43324.

It is true that in the case of *United States v. Michele Diagonale,.* 22 C. C. P. A. (Customs) 517, T. D. 47497 (the late Presiding Judge Graham dissenting), we held (after disposing of a question relating to the principal market in the foreign country), that the action of dealers in silver filigree, in entering into an agreement to fix prices at which they would sell the merchandise to others *without fixing the prices at which those others should resell*, did not create a controlled market such as existed in the cases cited, *supra*, but a careful reading of our opinion there will disclose that again and again the latter condition (that of not fixing the resale prices) was emphasized. This we did because we recognized that all the authorities relating to cases in which the prices for resale were fixed by the original sellers were to the effect that a restricted market was created, and that in such cases there was no foreign value in the sense of the statute.

In the case of *J. H. Cottman & Co. v. United States*, 20 C. C. P. A. (Customs) 344, T. D. 46114, which arose under Antidumping Act,. 1921, the merchandise consisting of raw phosphate rock was shown to be controlled, *both as to price and use*, by a Government corporation in Morocco, and it was held, by reason of *both restrictions*, that the prices at which it was sold in the country of origin did not constitute foreign value.

In the light of these authorities, we must hold against the contentions of the Government respecting this phase of the case.

It is urged on behalf of the Government that such a decision may enable manufacturers in foreign countries, by proper organization, to circumvent the provision respecting foreign value and that this would be contrary to the intent of Congress. Certain illustrations of such possibilities are given. As to this we can only say that Congress. has defined for the courts what foreign value means, it not being left. to the courts themselves to define it. The definition is one of long standing, its substance reaching back almost, if not quite, to the beginning of customs administration in this country. It may have been instituted at a time when business methods were entirely different from those which are practiced in foreign countries, and, to an extent,. in our own, at the present time; but however that may be, the courts are not at liberty to set aside the definition which Congress has given and substitute one of their own making. Again and again the statute· has been construed to mean that in a market restricted, as was the market for this merchandise in Holland, foreign value cannot be found on the basis of inland sales. The possible effect of this construction

was referred to in the dissenting opinion of the late Presiding Judge. Graham in the *Diagonale* case, *supra*, where he said:

It may be that to come to this conclusion would, under present world existing conditions, destroy foreign value in many foreign countries. . However, this is no reason for a change in our construction of these statutes, in order to care for changing foreign political and trade conditions. The legislative body is at hand, and can, at any time, make any necessary changes in the method of ascertainment of value on dutiable goods which enter the country. If such changes are necessary, it is the legislative duty, not ours. We have adhered, for years, to judicial views which are well known to the Congress. To depart from these views now, because of differing world conditions, is ill-advised.

The foregoing is not in conflict with anything contained in the majority opinion in that case and it seems appropos here. We are unable to agree with counsel for the Government that the courts have the authority they seek to have us assume.

The only remaining question in the case is that relating to export value. While the first of the Government's assignments of error alleges that the court erred "in entering judgment that the entered value is the export value," this was not seriously pressed before us. Clearly there is substantial evidence in the record to support findings 4 and 5 quoted, *supra*, from the decision of the trial judge, and we concur in the view expressed by the appellate division that the trial judge correctly stated the law applicable to the case.

The judgment of the United States Customs Court is *affirmed*.