Collin & Gissel (American Askania Corporation) v. United States

No. 6174.—Invoices dated Berlin, Germany, November 26, 1935, etc.
Certified November 26, 1935, etc.
Entered at Houston, Tex., January 14, 1936, etc.
Entry No. 674–H, etc.

(Decided June 20, 1945)

*Ira P. Jones* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Richard H. Welsh* and *Samuel D. Spector*, special attorneys), for the defendant.

Cole, Judge: The value of torsion balances, field balances, and accessories and parts for each is the subject of these appeals for reappraisement.

Substantially the same merchandise has been the subject of previous reappraisement litigation, *United States* v. *T. E. Ash (American Askania Corp.), Freedman & Slater*, 23 C. C. P. A. 360, T. D. 48211, and *United States* v. *T. E. Ash et al.*, 2 Cust. Ct. 1017, Reap. Dec. 4601. The records in the cited cases have been incorporated herein by consent of the parties.

In each of the incorporated cases, cost of production, section 402 (f) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402 (f)), was held to be the proper basis for appraisement, the conclusion being based on a finding that such instruments—there being no similar merchandise—were exclusively manufactured by Askania Werke of Germany, who did not freely offer the articles to all purchasers but limited their sales in the home market to consumers; that export sales to the United States were restricted to the importer herein, American Askania Corporation, whose entire stock was owned and controlled

by the said German manufacturer, and who, under terms of a written contract, agreed to purchase all the instruments and apparatus on its own account at prices no higher than the factory prices of Askania Werke; and that the said American importer, the sole distributor in the United States, sold only to consumers. The decision in each case emphasized that sales to dealers for resale were refused, and distribution of the instruments was limited to consumers because the highly scientific character of the machines required that the technical method of handling them be explained by experts—a service included in the sales price—to insure proper and efficient use by the consumers, either geologists or geophysicists.

The proof adduced at the trial of these appeals is supplementary to that in the incorporated cases. Plaintiff's witness, the vice president and general manager of the importing corporation, who appeared in the earlier cases, also testified herein. Much of his testimony is cumulative of that previously offered, the important addition thereto showing that the conditions existing throughout the time covered by the incorporated cases continued to prevail during the subsequent period involved in the appeals under consideration. Plaintiff's documentary evidence, an affidavit (exhibit 1) executed jointly by six officials or employees of the German manufacturing firm, reaffirms previous testimony, applicable to the present issue, as set forth by the same persons in the affidavit, exhibit 3, received in the *Ash* case, T. D. 48211, *supra*, which was accorded considerable probative value for its complete presentation of the course of trade, as well as comprehensive tabulations displaying every element included in statutory cost of production, section 402 (f), *supra*, with respect to the instruments in question. Defendant's special agent's report (illustrative exhibit A) contains nothing contradictory, but rather tends to support the evidence submitted by plaintiff.

A description of the nature and purpose of the articles in question, contained in the affidavit, said exhibit 3, was repeated by the appellate court in the *Ash* case, *supra*, as follows:

\* \* \* torsion balances \* \* \* determine the direction and distribution of the force of gravity. The field balances determine the distribution and direction of the vertical or horizontal intensity of the earth magnetism. Their object is to allow the geologists and geophysicists, through these mathematical, physical results, to obtain certain ideas about the structure, dipping, extent and depth of the nonvisible strata of the underground on the surface. As a result of these measurements and knowledge gained by them, the geologists and geophysicists determine such places in an area where a boring has to be made in order to obtain definite information about the whole surveyed territory, through one or a few borings systematically selected. By this method, in all countries where trained geophysicists have been working with torsion balances, or magnetic field balances, new deposits have been discovered. For instance, petroleum, salt domes, potash, or coal deposits.

Defendant contends that plaintiff has failed to show the absence of a foreign value, section 402 (c) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402 (c)), and United States value, section 402 (e) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402 (e)), and therefore these appeals should be dismissed because the importer has not proved the nonexistence of such values before resorting to cost of production. In support of this contention, counsel argues that "sales were made to consumers because, by the very nature of the instruments, only oil producing companies would be interested. It was merely a circumstance, not a cause, resulting in the sales to consumers." In other words, it is now defendant's position that the restricted scope of sales, i. e., to consumers only, was not a matter of choice with the foreign manufacturer and the American importer, but a course adopted from the scientific nature of the merchandise, itself.

The combined records before me are void of any evidence to support the allegation made. The proof is consistent that offers were not directed to dealers for resale, and that sales were actually refused such a class of prospective purchasers. The evidence relating to the instant appeals, which is fully corroborative of that embodied in the incorporated cases, includes the oral testimony of the importer who stated that offers for sale and sales of torsion balances and field balances were limited to consumers and never included dealers, because "it was against the interest of the company to sell to anyone, since, in the case of a dealer, he wouldn't be in a position to handle the technical service necessary," and the special agent's report, collective illustrative exhibit A, explains that "as a matter of principle, the company refuses to sell the instruments to dealers for resale, because the dealers as a rule do not possess the technical training necessary to explain the application of the instruments to a user and to furnish him with the scientific advice and instruction which is necessary for him to have before he can use such an instrument."

*American Shipping Co. (General Electric X-Ray Corp.)* v. *United States*, 29 C. C. P. A. 250, C. A. D. 198, decided subsequent to the incorporated cases and cited by defendant, as favorable to its position, is clearly distinguishable from the present issue. The cited case was limited to a determination of statutory foreign value, the parties having agreed that there was no export value. The merchandise consisted of X-ray grids used with X-ray fluoroscopic apparatus by doctors and hospitals in examinations of the body of a patient. It was established of record that a single unit was the usual wholesale quantity, that the merchandise was sold by the manufacturer to consumers, as well as to dealers for resale, and that the manufacturer's price to the consumer was equal to that charged by dealers to consumers. The importer argued for the manufacturer's prices to dealers as the correct foreign value, claiming that sales to consumers or users

were retail sales, not within the purview of the phrase "all purchasers in the ordinary course of trade," as contemplated by the statute, and therefore should be disregarded in finding value for tariff purposes. In disagreeing with this contention, the court emphasized the well-established principle that "the law is not concerned with the persons who buy, but the manner in which they buy," *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, T. D. 42216, and held that sales to consumers may be considered in finding foreign value when such sales meet all statutory requirements.

In the *American Shipping Co.* case, *supra*, the merchandise was freely offered to all purchasers. In the present case, the foreign manufacturer in the country of exportation and the American importer in this country very definitely limited their offers, as well as sales, to consumers. Therein lies the vital distinction between the two cases and renders wholly inapplicable to the instant case the principle invoked in the cited one.

The conclusions reached in the incorporated cases are also controlling here. Accordingly, I find cost of production, section 402 (f), *supra*, to be the proper basis for appraisement of the instant merchandise and hold such statutory value to be the unit invoice values, plus packing as invoiced. Judgment will be rendered accordingly.