(Reap. Dec. 9306)

E. DILLINGHAM, INC., ET AL. v. UNITED STATES

Entry No. 0–662, etc.

(Decided February 3, 1959)

*Gilbert & Segall* (*Harold R. Tyler*, Jr., of counsel) for the plaintiffs.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

LAWRENCE, Judge: This cause of action presents an interesting problem.

It is established by the record evidence that the Atomic Energy of Canada, Ltd. (AECL), located in Ottawa, Ontario, Canada, is a corporation wholly owned by the Canadian Government. This corporation produced the seven so-called "Cobalt 60 Beam X-ray units," which are the subject of these appeals for a reappraisement, and it is the only concern in Canada which manufactures such articles. The Cobalt 60 was not a part of any of the importations and is not involved in these proceedings.

The importations are more specifically referred to as Model B Theratron and Model C Theratron, Jr., Beam Therapy X-ray units and are illustrated in exhibits 1 and 2, respectively.

The units are imported in a knocked-down condition and, when assembled, installed, and equipped with radioactive cobalt, are used by hospitals and clinics for therapeutic and diagnostic purposes in the treatment of cancer patients.

The General Electric Company (GE) is the real importer herein.

The units were appraised on the basis of foreign value of such merchandise at the list prices at which said units were sold in Canada for home consumption, the price for the Model B being $57,000 and for Model C $22,500, Canadian currency. Those figures, however, do not include the price of the Cobalt 60 but do cover an amount for surveying, assembling, hookup, and warranty for 1 year of the equipment. In addition thereto, there was an installation charge of $2,500 and $500, respectively, Canadian currency, for Models B and C. The latter figures form no part of the list prices.

GE purchased these units at said list prices, less 20 per centum, the reason for this discount being that AECL considered GE qualified to assemble, hookup, and warrant the units. Consequently, GE made entry herein at 80 per centum of the stated list prices.

Plaintiffs, in their trial memorandum, made the following contentions:

1. The appraisers erroneously found a dutiable value for merchandise dissimilar to the units actually offered to and purchased by GE.

2. There is no dutiable foreign value for the merchandise actually bought by GE.

3. Since no export or United States value can be established in accordance with the statute, the proper valuation of these units is the cost of their production immediately preceding exportation from Canada.

Plaintiffs' claim of dissimilarity is predicated upon the fact that GE was importing unassembled, uninstalled, and unwarranted Model B and Model C units which were shipped at the order of GE to the premises of each of its customers and there assembled into complete machines and installed under the direction of its trained technicians and radiation physicists. GE also agreed to service the units and to warrant them against defects in material and workmanship.

In the light of these circumstances, GE contends that it was error for the appraiser to appraise the imported units in accordance with the advertised list prices adopted by AECL for sales to ultimate users. To quote from its brief, GE asserts that—

* * * the Government has appraised these seven shipments as if they were fully assembled, serviced and warranted units without regard for the fact that GE assembles and installs and warrants and services these units after they arrive in the United States in a knocked-down condition.

It must be borne in mind, however, that whether AECL sells to Canadian users or to GE, the merchandise in each instance is delivered in a knocked-down condition. The only difference in the two transactions is that, in the one case, AECL performs the service of assembly, installation, and warranty, whereas GE undertakes to perform that service in the United States. However, the merchandise at the point of time when it leaves the production plant of AECL is identical.

It is clear from the record that the predominant sales in Canada of these units were to hospitals and clinics—there being minor sales to radiologists. Apparently, there were no agents or jobbers in Canada who purchased for resale in Canada, although the record discloses GE was offered that opportunity. By reason of the special nature, character, and use of the units, a delivery of one is deemed to be a wholesale quantity. In these circumstances, it is established that a foreign market value exists for the two models here in controversy. There is no evidence of a higher export value.

Section 402(c) of the Tariff Act of 1930 (19 U.S.C. § 1402(c)), as amended by the Customs Administrative Act of 1938, defines foreign value of imported merchandise as the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including certain costs and charges.

It is the opinion of the court based upon the testimonial and documentary evidence herein that the requirements of the statute above set forth have been established in this case, namely, that Ottawa is

the principal market in Canada for the subject merchandise and that it is freely offered for sale for home consumption to all purchasers in the principal market of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, at the prices returned by the appraiser herein. It is clear from the evidence that, by reason of the unusual size, weight, and structure of the units in controversy, as well as their specialized and scientific utility, the usual wholesale quantity is one unit and that it was the ordinary course of trade to deliver said units in a knocked-down or unassembled condition with assurances that they would be assembled, installed, and guaranteed at the place of the user customer by trained technicians and physicists. It is further disclosed by the record that the merchandise in its condition as imported was such as or identical to said units B and C at the point of shipment from the factory in Ottawa whether for consumption in Canada or for export to the United States.

In view of the foregoing circumstances and in the absence of proof of a higher export value, it becomes unnecessary to consider the alternative claims for appraisement on the basis of United States value or cost of production.

In support of their contention that the imported merchandise is "dissimilar" to that sold for home consumption in Canada, plaintiffs place reliance upon the case of *United States* v. *Draeger Shipping Co., Inc.*, 29 C.C.P.A. (Customs) 258, C.A.D. 199, and also cite *Collin & Gissel (American Askania Corporation)* v. *United States*, 15 Cust. Ct. 362, Reap. Dec. 6174.

The *Draeger* case related to certain imported merchandise consisting of 100 sets of unassembled parts of so-called "Facit calculating machines, E.K. model." It appears from the opinion in that case that there was neither a foreign nor an export value for the merchandise and that the unassembled calculating machines were neither sold nor freely offered for sale in the United States in their unassembled condition; that, before they were sold in this country, the unassembled machines were taken to the importer's factory and there assembled into complete machines. In that condition, they were freely offered for sale and sold in the United States at the same price as that asked and received for machines of the same model imported in an assembled condition. In conclusion, the court therein held that at the time of the exportation of the involved unassembled parts the value of such parts was substantially less than the price at which the calculating machines imported in an assembled condition were freely offered for sale in the principal markets of the United States and that, accordingly, the involved unassembled parts were not similar to the machines imported in an assembled condition and, hence, did not have a United States value.

The facts in the *Draeger* case are distinguishable from those in the instant case in that the unassembled parts of calculating machines in the *Draeger* case were assembled after importation at the importer's factory and were sold as complete assembled calculating machines in competition with machines of the same model imported in an assembled condition.

In all instances of the X-ray units in issue, delivery was made in a knocked-down condition, and assembly and installation were effected at the consumer's establishment.

In the *Collin* case, the imported merchandise consisted of torsion balances, field balances, and accessories and parts, which were appraised on the basis of cost of production, as defined in section 402(f) of the Tariff Act of 1930.

In that case, the court stated—

Substantially the same merchandise has been the subject of previous reappraisement litigation, *United States* v. *T. E. Ash (American Askania Corp.)*, *Freedman & Slater*, 23 C.C.P.A. 360, T.D. 48211, and *United States* v. *T. E. Ash et al.*, 2 Cust. Ct. 1017, Reap. Dec. 4601. The records in the cited cases have been incorporated herein by consent of the parties.

In each of the incorporated cases, cost of production, section 402 (f) of the Tariff Act of 1930 (19 U.S.C. 1940 ed. § 1402(f)), was held to be the proper basis for appraisement, the conclusion being based on a finding that such instruments—there being no similar merchandise—were exclusively manufactured by Askania Werke of Germany, who did not freely offer the articles to all purchasers but limited their sales in the home market to consumers; that export sales to the United States were restricted to the importer herein, American Askania Corporation, whose entire stock was owned and controlled by the said German manufacturer, and who, under terms of a written contract, agreed to purchase all the instruments and apparatus on its own account at prices no higher than the factory prices of Askania Werke; and that the said American importer, the sole distributor in the United States, sold only to consumers. The decision in each case emphasized that sales to dealers for resale were refused, and distribution of the instruments was limited to consumers because the highly scientific character of the machines required that the technical method of handling them be explained by experts—a service included in the sales price—to insure proper and efficient use by the consumers, either geologists or geophysicists.

It was the contention of defendant, in that case, that plaintiff had failed to show the absence of a foreign value and of a United States value and that the appeal should be dismissed because of failure of proof of nonexistence of such values before resorting to cost of production. It was the opinion of the court that the proof therein was consistent in showing that offers were not directed to dealers for resale and that sales were actually refused such a class of prospective purchasers. The conclusions reached in the incorporated cases were deemed controlling in the *Collin* case and cost of production was found to be the proper basis for appraisement.

It is considered that the *Collin* case is distinguishable from the facts in the present record, inasmuch as there was no refusal to sell the

subject merchandise to dealers for resale in Canada or for exportation to the United States. Although, due to the specialized nature of the merchandise, sales to consumers proved to be in the ordinary course of trade in the home market, sales for exportation were made both to consumers and to agents and jobbers, as is indicated by plaintiffs' exhibits 3 and 4.

Consideration has been given to the numerous other citations contained in briefs of adversary counsel, but it is deemed unnecessary to discuss them here.

Upon the testimonial and documentary record in this case, the court finds as facts—

1. The involved merchandise consists of Model B Theratron and Model C Theratron, Jr., Beam Therapy X-ray units, manufactured by Atomic Energy of Canada, Ltd., of Ottawa, Canada, and that Ottawa is the principal market.

2. That said units were exported to the United States during 1954, 1956, and 1957.

3. That during said period such therapy X-ray units were freely offered for sale to all purchasers in Canada for home consumption at list prices in quantities of one unit, which constitute the usual wholesale quantity in the ordinary course of trade.

4. There was no higher export value for such or similar merchandise.

The court concludes as matters of law that—

1. Foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930 (19 U.S.C. § 1402 (c)), as amended, is the proper basis for appraisement of the seven therapy X-ray units covered by the appeals herein; and

2. That such value is the value found by the appraiser in each instance.